**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROBERT ALLEN POYSON, *Petitioner-Appellant*, | No. 10-99005 |
| v. | D.C. No. 2:04-cv-00534-NVW |
| CHARLES L. RYAN, *Respondent-Appellee.* | ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, District Judge, Presiding

Argued and Submitted February 15, 2012
San Francisco, California

Filed March 22, 2013
Amended November 7, 2013
Argued and Submitted En Banc September 18, 2017
Amended January 12, 2018

Before: Sidney R. Thomas, Chief Judge, and Raymond C.
Fisher and Sandra S. Ikuta, Circuit Judges.

Order;
Opinion by Judge Fisher;
Concurrence by Judge Ikuta

## SUMMARY[*]

### Habeas Corpus / Death Penalty

The panel granted a petition for panel rehearing, filed an amended opinion reversing the district court's denial of Robert Allen Poyson's habeas corpus petition challenging his death sentence, and remanded.

The panel held that the Arizona Supreme Court denied Poyson his Eighth Amendment right to individualized sentencing by applying an unconstitutional causal nexus test to his mitigating evidence of a troubled childhood and mental health issues. The panel held that the error had substantial and injurious effect or influence in determining the sentence, and therefore granted habeas relief on this claim.

The panel denied relief on Poyson's claim that the Arizona courts failed to consider his history of substance abuse as a nonstatutory mitigating factor. The panel wrote that the state courts did consider the evidence and simply found it wanting as matter of fact. The panel wrote that the state supreme court did not misconstrue the state trial court's findings, so it did not deprive Poyson of meaningful appellate review of his death sentence.

The panel agreed with the district court that Poyson's ineffective assistance of counsel claim is procedurally defaulted because it is fundamentally different from the claim he presented in state court.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel denied Poyson's motion for reconsideration of its March 2013 order denying his motion for remand under *Martinez v. Ryan*, 566 U.S. 1 (2012).

Judge Ikuta concurred because the three-judge panel is bound by the decision in *McKinney v. Ryan*, 813 F.3d 798 (9th Cir. 2015) (en banc), but wrote separately to highlight how *McKinney*'s erroneous conclusion that a causal nexus error had a "substantial and injurious effect" on a state court's decision infects the panel's decision in this case.

---

## COUNSEL

Therese Michelle Day (argued), Assistant Federal Public Defender; Jon M. Sands, Federal Public Defender; Office of the Federal Public Defender, Phoenix, Arizona; for Petitioner-Appellant.

J.D. Nielsen (argued) and Jon G. Anderson, Assistant Attorneys General; Lacey Stover Gard, Chief Counsel; Mark Brnovich, Attorney General; Capital Litigation Section, Office of the Attorney General, Phoenix, Arizona; for Respondent-Appellee.

---

**ORDER**

The petition for panel rehearing filed April 12, 2013 (Dkt. 69), which remains pending pursuant to this court's April 2, 2014 order (Dkt. 79), is **GRANTED**.

The opinion filed November 7, 2013, and reported at 743 F.3d 1183, is **AMENDED**. An amended opinion is filed concurrently with this order.

No further petitions for rehearing may be filed.

**OPINION**

FISHER, Circuit Judge:

Robert Allen Poyson was convicted of murder and sentenced to death in 1998. After pursuing direct review and seeking postconviction relief in state court, he filed a habeas petition in federal district court. The district court denied the petition, and Poyson appeals.

Poyson raises three claims on appeal, each of which has been certified by the district court pursuant to Fed. R. App. P. 22(b) and 28 U.S.C. § 2253(c): (1) the Arizona courts applied an unconstitutional causal nexus test to mitigating evidence; (2) the Arizona courts failed to consider mitigating evidence of his history of substance abuse; and (3) his trial counsel provided ineffective assistance of counsel during the penalty phase of his trial by failing to investigate the possibility that he suffered from fetal alcohol spectrum disorder. We agree with Poyson on his first claim. We conclude his second claim

is without merit. And we hold his third claim is procedurally defaulted.

As to the first claim, we hold the Arizona Supreme Court denied Poyson his Eighth Amendment right to individualized sentencing by applying an unconstitutional causal nexus test to his mitigating evidence of a troubled childhood and mental health issues. We reach this conclusion because (1) the Arizona Supreme Court sentenced Poyson in 2000, which was in the midst of the 15-year period during which that court consistently applied an unconstitutional causal nexus test to evidence of a capital defendant's family background or mental condition, *see McKinney v. Ryan*, 813 F.3d 798, 802–03 (9th Cir. 2015) (en banc); (2) in sentencing Poyson, the Arizona Supreme Court gave Poyson's proffered evidence *no weight*, and it expressly did so *because of* the absence of a causal connection between the evidence and his crimes, *see State v. Poyson*, 7 P.3d 79, 90–91 (Ariz. 2000); (3) in affording that evidence no weight, the Arizona Supreme Court cited a passage in one of its earlier cases that we have specifically identified as articulating that court's unconstitutional causal nexus test, *see id.* (quoting *State v. Brewer*, 826 P.2d 783, 802 (Ariz. 1992)); *McKinney*, 813 F.3d at 815; and (4) although the Arizona Supreme Court couched its decision in terms of "mitigating weight" and "mitigating value," our case law makes clear that the court deemed the evidence nonmitigating *as a matter of law*, *see McKinney*, 813 F.3d at 816–17. The Arizona Supreme Court's application of this unconstitutional causal nexus test was "contrary to" the Supreme Court's decision in *Eddings v. Oklahoma*, 455 U.S. 104 (1982), *see* 28 U.S.C. § 2254(d)(1), and constituted a violation of Poyson's rights under the Eighth Amendment. We further hold the error "had substantial and injurious effect or influence in determining"

the sentence. *McKinney*, 813 F.3d at 822 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)). We therefore grant habeas relief on Poyson's causal nexus claim.

We deny habeas relief on Poyson's claim that the Arizona courts failed to consider his history of substance abuse as a nonstatutory mitigating factor. Poyson argues the state courts unconstitutionally refused to *consider* mitigating evidence, a claim arising under *Lockett v. Ohio*, 438 U.S. 586 (1978), and *Eddings v. Oklahoma*, 455 U.S. 104 (1982). The state courts, however, did consider the evidence. They simply found it wanting as a matter of fact, finding the evidence failed to prove a history of substance abuse. There was therefore no constitutional violation under *Lockett* and *Eddings*. Nor was there a constitutional violation under *Parker v. Dugger*, 498 U.S. 308, 321 (1991). The state supreme court did not misconstrue the state trial court's findings, so it did not deprive Poyson of meaningful appellate review of his death sentence.

Finally, we agree with the district court that Poyson's ineffective assistance of counsel claim is procedurally defaulted because it is fundamentally different from the claim he presented in state court. Although it is true that "new factual allegations do not ordinarily render a claim unexhausted, a petitioner may not 'fundamentally alter the legal claim already considered by the state courts.'" *Beaty v. Stewart*, 303 F.3d 975, 989–90 (9th Cir. 2002) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986)). Poyson's federal petition raises a theory of deficient performance – failure to investigate and present mitigating evidence of fetal alcohol spectrum disorder – that the state courts had no "meaningful opportunity to consider." *Vasquez*, 474 U.S. at 257. The claim is therefore procedurally defaulted.

# I.  BACKGROUND

## A.  The Crimes

Poyson was born in August 1976.  The facts of his crimes, committed in 1996, were summarized as follows by the Arizona Supreme Court in *State v. Poyson*, 7 P.3d 79, 83 (Ariz. 2000).

Poyson met Leta Kagen, her 15 year-old son, Robert Delahunt, and Roland Wear in April 1996.  Poyson was then 19 years old and homeless.  Kagen allowed him to stay with her and the others at their trailer in Golden Valley, near Kingman, Arizona.  In August of the same year, Kagen was introduced to 48 year-old Frank Anderson and his 14 year-old girlfriend, Kimberly Lane.  They, too, needed a place to live, and Kagen invited them to stay at the trailer.

Anderson informed Poyson that he was eager to travel to Chicago, where he claimed to have organized crime connections.  Because none of them had a way of getting to Chicago, Anderson, Poyson and Lane formulated a plan to kill Kagen, Delahunt and Wear in order to steal the latter's truck.

On the evening of August 13, 1996, Lane lured Delahunt into a small travel trailer on the property, ostensibly for sex. There, Anderson commenced an attack on the boy by slitting his throat with a bread knife.  Poyson heard Delahunt's screams and ran to the travel trailer.  While Anderson held Delahunt down, Poyson bashed his head against the floor. Poyson also beat Delahunt's head with his fists, and pounded it with a rock.  This, however, did not kill Delahunt, so Poyson took the bread knife and drove it through his ear.

Although the blade penetrated Delahunt's skull and exited through his nose, the wound was not fatal. Poyson thereafter continued to slam Delahunt's head against the floor until Delahunt lost consciousness. According to the medical examiner, Delahunt died of massive blunt force head trauma. In all, the attack lasted about 45 minutes.

After cleaning themselves up, Poyson and Anderson prepared to kill Kagen and Wear. They first located Wear's .22 caliber rifle. Unable to find ammunition, Poyson borrowed two rounds from a young girl who lived next door, telling her that Delahunt was in the desert surrounded by snakes and the bullets were needed to rescue him. Poyson loaded the rifle and tested it for about five minutes to make sure it would function properly. He then stashed it near a shed. Later that evening, he cut the telephone line to the trailer so that neither of the remaining victims could call for help.

After Kagen and Wear were asleep, Poyson and Anderson went into their bedroom. Poyson first shot Kagen in the head, killing her instantly. After quickly reloading the rifle, he shot Wear in the mouth, shattering Wear's upper right teeth. A struggle ensued, during which Poyson repeatedly clubbed Wear in the head with the rifle. The fracas eventually moved outside. At some point, Anderson threw a cinder block at Wear, hitting him in the back and knocking him to the ground. While the victim was lying there, Poyson twice kicked him in the head. He then picked up the cinder block and threw it several times at Wear's head. After Wear stopped moving, Poyson took his wallet and the keys to Wear's truck. To conceal the body, Poyson covered it with debris from the yard. Poyson, Anderson and Lane then took

the truck and traveled to Illinois, where they were apprehended several days later.

## B. Trial and Conviction

A grand jury indicted Poyson on three counts of first degree murder, one count of conspiracy to commit murder and one count of armed robbery. The jury convicted on all counts in March 1998, following a six-day trial.

## C. Sentencing

### 1. *Mitigation Investigation*

Following the guilty verdicts, the state trial court approved funds to hire a mitigation specialist to assist in preparing for Poyson's sentencing. Counsel retained investigator Blair Abbott.

In a June 1998 memorandum, Abbott informed counsel that Poyson's mother, Ruth Garcia (Garcia), used drugs during the first trimester of her pregnancy and recommended that counsel investigate the possibility that Poyson suffered brain damage as a result. The memorandum advised counsel that "one of the significant issues should be the hard core drug abuse of both [of Poyson's] parents, preconception and in the first trimester of Ruth's pregnancy." Abbott wrote that "Ruth Garcia's heavy drug abuse in the pre pregnancy and early on in the pregnancy undoubtedly caused severe damage to her unborn child."

In September 1998, Abbott mailed trial counsel "Library & Internet research regarding drug & alcohol fetal cell damage; reflecting how these chemicals when taken in the

first trimester [a]ffect subsequent intelligence, conduct, emotions, urges etc [sic] as the child grows into adulthood."

### 2. *Presentence Investigation Report*

The probation office prepared a presentence investigation report in July 1998. Poyson told the probation officer that he had a bad childhood because he was abused by a series of stepfathers, who subjected him to physical, mental and emotional abuse. Poyson also said he suffered from impulsive conduct disorder, which was diagnosed when he was 13. Poyson would not answer any questions on his substance abuse history or juvenile record.

### 3. *Presentencing Hearing*

In October 1998, the trial court held a one-day presentencing hearing. Poyson's trial counsel called three witnesses to present mitigating evidence: his aunt, Laura Salas, his mother, Ruth Garcia, and the mitigation investigator, Blair Abbott. Counsel also introduced 56 exhibits. Poyson did not testify. The witnesses testified about Poyson's drug and alcohol abuse and the mental and physical abuse inflicted on Poyson by his stepfather, Guillermo Aguilar, and maternal grandmother, Mary Milner. They also testified that Poyson's stepfather, Sabas Garcia (Sabas), committed suicide in 1988, and that Sabas' death had a devastating effect on Poyson. They further testified that Garcia used drugs and alcohol during the first three months of her pregnancy with Poyson.

### 4. *Poyson's Sentencing Memorandum*

In early November 1998, Poyson filed a sentencing memorandum urging the court to find three statutory and 25 nonstatutory mitigating circumstances.[1]  As relevant here, Poyson argued his history of drug and alcohol abuse, troubled childhood and personality disorders constituted both statutory and nonstatutory mitigating circumstances.

### a. *Substance Abuse*

Poyson argued his substance abuse was a statutory mitigating circumstance because it impaired his capacity to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of law at the time of the murders. *See* Ariz. Rev. Stat. Ann. § 13-703(G)(1) (1998).  In the alternative, he argued that, even if his substance abuse was not causally related to the murders, it constituted a nonstatutory mitigating circumstance.  In support of these arguments, Poyson emphasized his parents' use of drugs and alcohol at the time of his conception, his mother's use of drugs and alcohol during pregnancy, an incident in which

---

[1] At the time of Poyson's sentencing, Arizona law required the sentencing judge to impose a sentence of death if the court found one or more aggravating circumstances and "no mitigating circumstances sufficiently substantial to call for leniency."  Ariz. Rev. Stat. Ann. § 13-703(E) (1998).  The law enumerated 10 aggravating circumstances, *see id.* § 13-703(F), and five statutory mitigating circumstances – including diminished capacity, duress, minor participation and the defendant's age, *see id.* § 13-703(G).  The sentencing court also was required to consider any *nonstatutory* mitigating circumstances offered by the defendant – i.e., "any factors proffered by the defendant or the state which are relevant in determining whether to impose a sentence less than death, including any aspect of the defendant's character, propensities or record and any of the circumstances of the offense."  *Id.*

Poyson was involuntarily intoxicated at the age of three or four, Poyson's abuse of alcohol beginning at age 13 and Poyson's five-month placement at WestCare, a residential treatment facility, for substance abuse treatment in 1992, when he was 15. Poyson also pointed to evidence that he used PCP two days before the murders, used alcohol the night before the murders, used marijuana the day of the murders and suffered a PCP flashback during Delahunt's murder.

### b.  *Troubled Childhood*

Poyson argued his troubled childhood was a statutory mitigating circumstance because it affected his behavior at the time of the murders. In the alternative, he argued his troubled childhood constituted a nonstatutory mitigating circumstance. Poyson emphasized his mother's use of drugs and alcohol during the first trimester of pregnancy. He argued alcohol and drug use during pregnancy can cause brain damage and birth defects and lead a child to engage in delinquent and criminal behavior. He also attached to the sentencing memorandum several scientific articles on fetal alcohol syndrome. The memorandum pointed out that Poyson never knew his biological father, lacked a stable home life, was physically and mentally abused by several adults (including Aguilar and Milner), was devastated by Sabas' suicide and was sexually abused and sodomized by a neighbor on one occasion shortly after Sabas' death. Poyson emphasized that his delinquent behavior and substance abuse began shortly after the death of Sabas and the sexual assault.

### c.  *Mental Health Issues*

The sentencing memorandum argued Poyson suffered from several personality disorders, constituting a nonstatutory

mitigating circumstance. The memorandum pointed to a 1990 psychiatric evaluation by Dr. Bruce Guernsey. According to the sentencing memorandum, Guernsey diagnosed Poyson with severe "conduct disorder," reported that Poyson exhibited symptoms of antisocial behavior, "manic depression" or "impulsive conduct disorder" and recommended Poyson be prescribed medication to control his behavior. Poyson also pointed to a 1990 Juvenile Predisposition Investigation by Nolan Barnum. Barnum too recommended Poyson be prescribed medication to control his behavior. A 1993 psychological evaluation performed by Jack Cordon and Ronald Jacques from the State Youth Services Center in St. Anthony, Idaho, diagnosed Poyson with "mild mood disturbance." Dr. Celia A. Drake, who Poyson's counsel retained to perform a forensic evaluation of Poyson, diagnosed "Adjustment Disorder with depressive mood, mild intensity," and "Anti-social Personality Disorder." Dr. Drake also found Poyson's overall intellectual functioning to be "in the low average range."

5. *Sentencing Hearing and Imposition of Sentence*

The state trial court held a sentencing hearing and imposed sentence in late November 1998.

The court found the state had proved, beyond a reasonable doubt, three aggravating circumstances for the murders of Delahunt and Wear: the murders were committed in expectation of pecuniary gain; the murders were especially cruel; and multiple homicides committed during the same offense. *See* Ariz. Rev. Stat. Ann. § 13-703(F)(5), (6), (8) (1998). The court found two aggravating circumstances applicable to Kagen's murder: pecuniary gain; and multiple homicides. *See id.* § 13-703(F)(5), (8).

The court found Poyson failed to prove any statutory mitigating factors. Poyson's difficult childhood and mental health issues were not statutory mitigating factors under § 13-703(G)(1) because they did not significantly impair Poyson's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.[2] The court explained:

> There has certainly been evidence that the defendant had gone through a turbulent life, perhaps had mental-health issues that would distinguish him from the typical person on the street.
>
> Listening to his description of how these murders were committed, based upon a description of somewhat a methodical carrying out of a plan, the Court sees absolutely nothing on the record, in this case, to suggest the applicability of this mitigating circumstance.

Turning to nonstatutory mitigating factors, the court first explained the three-step analysis it used to evaluate each nonstatutory mitigating circumstance proffered by Poyson: "[1] to analyze whether the defense has shown this fact by a preponderance of evidence, and then if they have, [2] to determine whether I would assign that any weight as a

---

[2] *See* Ariz. Rev. Stat. Ann. § 13-703(G)(1) (1998) ("Mitigating circumstances [include] [t]he defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution.").

mitigating factor, and of course, for any that . . . pass both of those two tests, [3] I have to weigh them all along with the other factors in the final [sentencing] determination in this case." The court then proceeded to consider Poyson's mental health issues, troubled childhood and history of substance abuse as potential mitigating factors.

### a. *Mental Health Issues*

The court rejected Poyson's mental health issues as a nonstatutory mitigating factor at the second step in the analysis. The court found Poyson had proven he suffered from personality disorders, but gave them no weight because they were not causally related to the murders:

> [T]he defendant had some mental health and psychological issues. I think . . . the defense has established that there were certain . . . personality disorders that the defendant, in fact, may have been suffering from.
>
> The Court, however, does not find that they rise to the level of being a mitigating factor because I am unable to draw any connection whatsoever with such personality disorders and the commission of these offenses.[3]

---

[3] The court rejected evidence of Poyson's low IQ for similar reasons. At the first step in the analysis, the court found that "there is certain evidence in this case that would support the proposition that the defendant's mental capacity may be diminished, at least compared to the norm in the population, and that his I.Q. may be low, at least compared to the norm in the population." The court, however, gave this circumstance no mitigating weight in light of the planning and sophistication that went

### b.  *Troubled Childhood*

The court similarly rejected Poyson's difficult childhood as a nonstatutory mitigating factor.  At step one, the court found the "defense has shown that defendant suffered a dysfunctional childhood, that he was subjected to physical and sexual abuse, and that he was subjected to certain levels of mental abuse."  At step two, however, the court gave these circumstances no mitigating weight because they were not causally connected to the murders:  "The Court finds absolutely nothing in this case to suggest that his latter conduct was a result of his childhood."  The court also found "the defense has established, by a preponderance of the evidence, that the defendant lost a parent figure and was subjected to sexual abuse at a relatively young age."  The court rejected this factor at step two, however, because it was "not convinced that there is any connection between that abuse, that loss, and his subsequent criminal behavior."

### c.  *Substance Abuse*

Finally, the court rejected Poyson's history of substance abuse at both steps one and two in the analysis: Poyson failed to establish a significant history of drug or alcohol abuse and, even if he could do so, the court would have given the evidence no weight because he failed to establish a causal connection between the substance abuse and the crimes. The court said:

---

into the crimes – "certain prep[ar]atory steps that were taken – admittedly, not overly-sophisticated, but attempts were made to do certain things, to disable warning systems to enable these murders to be committed and to get away with the loot that was the purpose of the murders; specifically, the vehicle."

The argument is made that the defendant was subjected to alcohol abuse and drug abuse. Other than very vague allegations that he has used alcohol in the past or has used drugs in the past, other than a fairly vague assertion that he was subject to some sort of effect of drugs and/or alcohol at the time, that these offenses were committed, I really find very little to support the allegation that the defendant has a significant alcohol and/or drug abuse, and again, going back to the methodical steps that were taken to murder three people to get a vehicle to get out of Golden Valley, it's very difficult for me to conclude that the defendant's ability to engage in goal-oriented behavior was, in any way, impaired at the time of the commission of these offenses.

Ultimately, the state trial court found only one nonstatutory mitigating factor – Poyson's cooperation with law enforcement. The court concluded this one mitigating factor was insufficiently substantial to call for leniency and imposed a sentence of death.

6. *Arizona Supreme Court Decision*

The Arizona Supreme Court affirmed Poyson's conviction and sentence on direct appeal. *See State v. Poyson*, 7 P.3d 79 (Ariz. 2000). As required by Arizona law, the court "independently review[ed] the trial court's findings of aggravation and mitigation and the propriety of the death sentence." Ariz. Rev. Stat. Ann. § 13-703.01(A) (2000).

With respect to statutory mitigating factors, the supreme court agreed with the trial court that Poyson's drug use was not a statutory mitigating circumstance under § 13-703(G)(1). *See Poyson*, 7 P.3d at 88–89. In the court's view, there was "scant evidence that he was actually intoxicated on the day of the murders." *Id.* at 88. "Although Poyson purportedly used both marijuana and PCP 'on an as available basis' in days preceding these crimes, the only substance he apparently used on the date in question was marijuana," and Poyson "reported smoking the marijuana at least six hours before killing Delahunt and eleven hours before the murders of Kagen and Wear." *Id.* The evidence that Poyson experienced a PCP flashback during the murder of Delahunt was not credible, and even if the flashback occurred, it lasted only a "few moments." *Id.* at 88–89. Poyson was "not under the influence of PCP at any other time." *Id.* at 89. Poyson's claims of substantial impairment were also belied by his deliberate actions, including concocting a ruse to obtain bullets from a neighbor, testing the rifle to make sure it would work properly when needed, cutting the telephone line and concealing the crimes. *See id.* The court then turned to nonstatutory mitigation, agreeing with the trial court that Poyson's substance abuse, mental health and abusive childhood were not nonstatutory mitigating circumstances.

a. *Substance Abuse*

As to substance abuse, the supreme court agreed with the trial court that Poyson's evidence failed at step one because it did not show a history of drug or alcohol abuse:

> The trial judge refused to accord any weight to the defendant's substance abuse as a nonstatutory mitigating circumstance. It

characterized the defendant's claims that he had used drugs or alcohol in the past or was under the influence of drugs on the day of the murders as little more than "vague allegations." As discussed above, we agree.

*Id.* at 90.

### b. *Mental Health Issues*

With respect to mental health issues, the supreme court agreed with the trial court that Poyson's personality disorders, although proven at step one, were entitled to no weight at step two because they were not causally connected to the murders:

> The trial court found that Poyson suffers from "certain personality disorders" but did not assign any weight to this factor. Dr. Celia Drake diagnosed the defendant with antisocial personality disorder, which she attributed to the "chaotic environment in which he was raised." She found that there was, among other things, no "appropriate model for moral reasoning within the family setting" to which the defendant could look for guidance. However, we find no indication in the record that "the disorder controlled [his] conduct or impaired his mental capacity to such a degree that leniency is required." *State v. Brewer*, 170 Ariz. 486, 505, 826 P.2d 783, 802 (1992); *see also* [*State v. Medina*, 193 Ariz. 504, 517, 975 P.2d 94, 107 (1999)] (holding that the defendant's personality disorder "ha[d] little or no mitigating value" where the defendant's

desire to emulate his friends, not his mental
disorder, was the cause of his criminal
behavior). We therefore accord this factor no
mitigating weight.

*Id.* at 90–91 (last alteration in original).

### c.  *Troubled Childhood*

The supreme court also agreed with the trial court's
assessment of Poyson's troubled childhood.  The court found
Poyson established an abusive childhood at step one, but gave
this consideration no weight at step two because of the
absence of a causal nexus:

> Defendant presented some evidence that as a
> youngster he was physically and mentally
> abused by several stepfathers and his maternal
> grandmother.   He also self-reported one
> instance of sexual assault by a neighbor.
> Again, however, defendant did not show that
> his traumatic childhood somehow rendered
> him unable to control his conduct.  Thus, the
> evidence is without mitigating value.

*Id.* at 91.

Ultimately, the Arizona Supreme Court found three
aggravating factors (pecuniary gain, murder committed in an
especially cruel manner and multiple homicides), one
statutory mitigating factor (Poyson's age) and three
nonstatutory mitigating factors (cooperation with law
enforcement, potential for rehabilitation and family support).

*See id.* at 90–91.[4]   The court concluded the mitigating evidence was not sufficiently substantial to call for leniency and affirmed the death sentence. *See id.* at 91–92; Ariz. Rev. Stat. Ann. § 13-703.1(B) (2000).

## D.  State Postconviction Review

The Arizona Superior Court denied Poyson's petition for postconviction relief in 2003.  The court provided a reasoned decision on Poyson's claim of penalty phase ineffective assistance of counsel (his third claim in this appeal) but not on Poyson's claims that the Arizona courts failed to consider relevant mitigating evidence (his first and second claims on appeal).  In 2004, the Arizona Supreme Court summarily denied Poyson's petition for review.

## E.  Federal District Court Proceedings

Poyson filed a federal habeas petition in 2004.  In 2010, the district court denied the petition.  The court rejected on the merits Poyson's claims that the Arizona courts failed to consider mitigating evidence.  The court also concluded Poyson's penalty phase ineffective assistance of counsel claim was procedurally defaulted because it was "fundamentally different than [the claim] presented in state court."  Poyson timely appealed.

---

[4] The Arizona Supreme Court thus found three more mitigating factors than the trial court found.  The appellate court nonetheless agreed with the trial court that a death sentence was warranted.

## F.  Proceedings in This Court

We originally heard argument on Poyson's appeal in February 2012.  We issued an opinion in March 2013, *Poyson v. Ryan*, 711 F.3d 1087 (9th Cir. 2013), and an amended opinion in November 2013, *Poyson v. Ryan*, 743 F.3d 1185 (9th Cir. 2013).  In April 2014, we stayed proceedings on Poyson's petition for panel rehearing pending the resolution of en banc proceedings in *McKinney v. Ryan*, 730 F.3d 903 (9th Cir. 2013).[5]  Our en banc court decided *McKinney* in December 2015.  *See McKinney v. Ryan*, 813 F.3d 798 (9th Cir. 2015) (en banc).  In May 2016, we extended the stay on Poyson's petition for rehearing pending resolution of Supreme Court proceedings in *McKinney*.  In October 2016, following the Supreme Court's denial of the petition for writ of certiorari in *McKinney*, we further extended the stay and directed the parties to file supplemental briefs addressing the impact of *McKinney* on the issues presented in this appeal.  Following the parties' briefing, we heard oral argument on the petition for rehearing in September 2017.  This amended opinion follows.

---

  [5] In May 2014, while our stay was in place, the Supreme Court denied Poyson's petition for writ of certiorari.  *See Poyson v. Ryan*, 134 S. Ct. 2302 (2014).  The Court also denied Poyson's motion to defer consideration of the petition for writ of certiorari.  *See id.*  The state contends we were required to lift our stay and issue the mandate once the Supreme Court denied certiorari.  We disagree.  Because we issued our stay under Fed. R. App. P. 41(d)(1), rather than Fed. R. App. P. 41(d)(2), the authorities upon which the state relies, including Rule 41(d)(2)(D), do not apply here.  *See Alphin v. Henson*, 552 F.2d 1033, 1034–35 (4th Cir. 1977), *cited with approval by Bell v. Thompson*, 545 U.S. 794, 806 (2005).

## II.  JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a).  We review de novo the district court's denial of Poyson's petition for habeas corpus, and we review the district court's findings of fact for clear error.  *See Brown v. Ornoski*, 503 F.3d 1006, 1010 (9th Cir. 2007).  Dismissals based on procedural default are reviewed de novo.  *See Robinson v. Schriro*, 595 F.3d 1086, 1099 (9th Cir. 2010).  We address Poyson's three claims in turn.

## III.  DISCUSSION

### A.  Causal Nexus Test

Poyson argues the Arizona courts applied an unconstitutional causal nexus test to mitigating evidence of his mental health issues, traumatic childhood and substance abuse history, in violation of his Eighth and Fourteenth Amendment rights to an individualized sentencing.  He contends the state courts improperly refused to consider this evidence in mitigation because he failed to establish a causal connection between the evidence and the murders.  He argues the state courts' actions violate his constitutional rights as recognized in *Tennard v. Dretke*, 542 U.S. 274, 283–87 (2004), *Smith v. Texas*, 543 U.S. 37, 45 (2004) (per curiam), and earlier decisions.  These cases hold that requiring a defendant to prove a nexus between mitigating evidence and the crime is "a test we never countenanced and now have unequivocally rejected."  *Smith*, 543 U.S. at 45.

Because Poyson filed his federal habeas petition after April 24, 1996, he must not only prove a violation of these rights but also satisfy the Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA). *See Fenenbock v. Dir. of Corr. for Cal.*, 681 F.3d 968, 973 (9th Cir. 2012).

Under AEDPA, we may not grant habeas relief with respect to any claim adjudicated on the merits in state court unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). We review the last reasoned state court decision addressing the claim, which for Poyson's causal nexus claim is the Arizona Supreme Court's decision affirming Poyson's death sentence on direct appeal. *See Crittenden v. Ayers*, 624 F.3d 943, 950 (9th Cir. 2010). Poyson relies on AEDPA's "contrary to" prong, arguing the Arizona Supreme Court's decision in *State v. Poyson*, 7 P.3d 79 (Ariz. 2000), was contrary to *Lockett v. Ohio*, 438 U.S. 586 (1978), *Eddings v. Oklahoma*, 455 U.S. 104 (1982), and *Penry v. Lynaugh*, 492 U.S. 302 (1989), *abrogated on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002).

1. *Exhaustion*

As a threshold matter, we agree with Poyson that he has fully exhausted this claim. The state argues that in state court Poyson raised a causal nexus claim with respect to only mental health issues and his troubled childhood, not his history of substance abuse. We disagree. Having reviewed the record, we conclude Poyson exhausted the claim with respect to all three categories of mitigating evidence. *See Powell v. Lambert*, 357 F.3d 871, 874 (9th Cir. 2004) ("A petitioner has exhausted his federal claims when he has fully and fairly presented them to the state courts.").

2. *The Arizona Supreme Court's Decision Was Contrary to Clearly Established Federal Law*

*Lockett*, *Eddings* and *Penry* held "a State could not, consistent with the Eighth and Fourteenth Amendments, prevent the sentencer from considering and giving effect to evidence relevant to the defendant's background or character or to the circumstances of the offense that mitigate against imposing the death penalty." *Penry*, 492 U.S. at 318. "[I]t is not enough simply to allow the defendant to present mitigating evidence to the sentencer." *Id.* at 319. "The sentencer must also be able to consider and give effect to that evidence in imposing sentence." *Id.* "[T]he sentence imposed at the penalty stage should reflect a reasoned *moral* response to the defendant's background, character, and crime." *Id.* (quoting *California v. Brown*, 479 U.S. 538, 545 (1987) (O'Connor, J., concurring)).

Under these decisions, a state court may not treat mitigating evidence of a defendant's background or character as "irrelevant or nonmitigating as a matter of law" merely because it lacks a causal connection to the crime. *Towery v. Ryan*, 673 F.3d 933, 946 (9th Cir. 2012), *overruled on other grounds by McKinney*, 813 F.3d at 824. The sentencer may, however, consider "causal nexus . . . as a factor in determining the weight or significance of mitigating evidence." *Lopez v. Ryan*, 630 F.3d 1198, 1204 (9th Cir. 2011), *overruled on other grounds by McKinney*, 813 F.3d at 818. "The . . . use of the nexus test in this manner is not unconstitutional because state courts are free to assess the weight to be given to particular mitigating evidence." *Schad v. Ryan*, 671 F.3d 708, 723 (9th Cir. 2011), *rev'd on other grounds*, 133 S. Ct. 2548 (2013), *and overruled on other*

*grounds by McKinney*, 813 F.3d at 819. As the Court explained in *Eddings*:

> Just as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, *as a matter of law*, any relevant mitigating evidence. . . . The sentencer, and the Court of Criminal Appeals on review, may determine the weight to be given relevant mitigating evidence. But they may not give it no weight by excluding such evidence from their consideration.

*Eddings*, 455 U.S. at 113–15.

In *McKinney*, 813 F.3d at 815, we held, "[f]or a little over fifteen years, the Arizona Supreme Court routinely articulated and insisted on [an] unconstitutional causal nexus test." Under this test, "family background or a mental condition could be given weight as a nonstatutory mitigating factor, but only if defendant established a causal connection between the background or condition and his criminal behavior." *Id.* Beginning in 1989, "[a]s a matter of law, a difficult family background or mental condition did not qualify as a nonstatutory mitigating factor unless it had a causal effect on the defendant's behavior in committing the crime at issue." *Id.* at 816. The Arizona Supreme Court "finally abandoned its unconstitutional causal nexus test for nonstatutory mitigation" in the mid-2000s. *Id.* at 817.

*McKinney* recognized that, in AEDPA cases, "we apply a 'presumption that state courts know and follow the law' and accordingly give state-court decisions 'the benefit of the

doubt.'" *Id.* at 803 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). But that "presumption is rebutted . . . where we know, based on its own words, that the Arizona Supreme Court did not 'know and follow' federal law." *Id.* at 804.

*McKinney* also recognized that "[t]he Arizona Supreme Court articulated the causal nexus test in various ways but always to the same effect." *Id.* at 816. "The Arizona Court frequently stated categorically that, absent a causal nexus, would-be nonstatutory mitigation was simply 'not a mitigating circumstance.'" *Id.* (quoting *State v. Wallace*, 773 P.2d 983, 986 (Ariz. 1989)). "Sometimes, the court stated that evidence offered as nonstatutory mitigation that did not have a causal connection to the crime should be given no 'weight.'" *Id.* Other times, "the Arizona Supreme Court stated that evidence of a difficult family background or mental illness was 'not necessarily' or not 'usually' mitigating, and then (often in the same paragraph) held as a matter of law that the evidence in the specific case before the Court was not mitigating because it had no causal connection to the crime." *Id.* at 817.

In the case before us, we conclude the Arizona Supreme Court applied an unconstitutional causal nexus test to Poyson's mitigating evidence of a difficult childhood and mental health issues. *First*, the court gave no weight at all to the evidence, and it did so because the evidence bore no causal connection to the crimes. *See Poyson*, 7 P.3d at 90–91. With respect to Poyson's childhood, the court ruled:

> Defendant presented some evidence that as a youngster he was physically and mentally abused by several stepfathers and his maternal grandmother. He also self-reported one

instance of sexual assault by a neighbor. Again, however, **defendant did not show that his traumatic childhood somehow rendered him unable to control his conduct. Thus, the evidence is without mitigating value**.

*Poyson*, 7 P.3d at 91 (emphasis added). With respect to Poyson's mental health issues, the court ruled:

The trial court found that Poyson suffers from "certain personality disorders" but did not assign any weight to this factor. Dr. Celia Drake diagnosed the defendant with antisocial personality disorder, which she attributed to the "chaotic environment in which he was raised." She found that there was, among other things, no "appropriate model for moral reasoning within the family setting" to which the defendant could look for guidance. However, **we find no indication in the record that "the disorder controlled [his] conduct** or impaired his mental capacity to such a degree that leniency is required." *State v. Brewer*, 170 Ariz. 486, 505, 826 P.2d 783, 802 (1992); *see also Medina*, 193 Ariz. at 517, 975 P.2d at 107 (holding that the defendant's personality disorder "ha[d] little or no mitigating value" where the defendant's desire to emulate his friends, not his mental disorder, was the cause of his criminal behavior). **We therefore accord this factor no mitigating weight**.

*Id.* at 90–91 (emphasis added) (alterations in original). This is some evidence that the court applied an unconstitutional causal nexus test in Poyson's case. *See McKinney*, 813 F.3d at 821 (holding the Arizona Supreme Court applied an unconstitutional causal nexus test based in part on "the factual conclusion by the sentencing judge, which the Arizona Supreme Court accepted, that McKinney's PTSD did not 'in any way affect[ ] his conduct in this case'" (alteration in original)).

*Second*, the Arizona Supreme Court affirmed Poyson's death sentence in 2000, in the midst of the 15-year period during which that court "*consistently* articulated and applied its causal nexus test." *McKinney*, 813 F.3d at 803 (emphasis added). Indeed, the Arizona court issued its decision in Poyson's case just a few months before it decided *State v. Hoskins*, 14 P.3d 997 (Ariz. 2000), *supplemented*, 65 P.3d 953 (Ariz. 2003), a case *McKinney* singled out as exemplifying the Arizona Supreme Court's unconstitutional practice. *See McKinney*, 813 F.3d at 814–15. This fact further supports the conclusion that the Arizona Supreme Court applied an unconstitutional causal nexus test in Poyson's case.

*Third*, in applying a causal nexus test to Poyson's mental health evidence, the Arizona Supreme Court cited a passage from *State v. Brewer*, 826 P.2d 783, 802 (1992), that *McKinney* specifically identified as applying an unconstitutional causal nexus test. *Compare Poyson*, 7 P.3d at 90–91 (quoting *Brewer* and stating "we find no indication in the record that 'the disorder controlled [his] conduct or impaired his mental capacity to such a degree that leniency is required'" (alteration in original)), *with McKinney*, 813 F.3d at 815 (citing this precise language in *Brewer* as exemplifying

the Arizona Supreme Court's unconstitutional causal nexus
test). This fact too supports the conclusion that the Arizona
Supreme Court applied an unconstitutional causal nexus test
in Poyson's case. *See McKinney*, 813 F.3d at 821
(concluding the Arizona Supreme Court applied an
unconstitutional test in part based on the court's "pin citation
to the precise page in [*State v. Ross*, 886 P.2d 1354, 1363
(Ariz. 1994),] where it had previously articulated that test").

*Fourth*, although the Arizona Supreme Court said the
evidence in Poyson's case was "without mitigating value"
and would be accorded "no mitigating weight," suggesting
the possibility that the court applied a causal nexus test as a
permissible weighing mechanism, *McKinney* makes clear that
the court instead applied an unconstitutional causal nexus
test, treating the evidence as irrelevant or nonmitigating *as a
matter of law*. *See id.* at 816 (holding the state court applied
an unconstitutional test where "the court stated that evidence
offered as nonstatutory mitigation that did not have a causal
connection to the crime should be given no 'weight'"); *id.*
(holding the state court applied an unconstitutional causal
nexus test where it said "a difficult family background is not
always entitled to great weight as a mitigating circumstance"
(quoting *State v. Towery*, 920 P.2d 290, 311 (Ariz. 1996)));
*id.* at 820 (holding the state court applied an unconstitutional
causal nexus test where it said "[a] difficult family
background, including childhood abuse, does not necessarily
have substantial mitigating weight absent a showing that it
significantly affected or impacted a defendant's ability to
perceive, to comprehend, or to control his actions" (quoting
*State v. McKinney*, 917 P.2d 1214, 1226 (Ariz. 1996))).

For these reasons, we conclude the Arizona Supreme
Court applied an unconstitutional causal nexus test to

Poyson's evidence of a troubled childhood and mental health issues. "This holding was contrary to *Eddings*." *Id.* at 821. Accordingly, as in *McKinney*, we "hold that the decision of the Arizona Supreme Court applied a rule that was 'contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States.'" *Id.* (alteration in original) (quoting 28 U.S.C. § 2254(d)(1)).

With respect to Poyson's evidence of a history of substance abuse, however, we conclude there was no *Eddings* error. The state supreme court rejected this evidence at step one in the analysis, adopting the trial court's finding as a matter of fact that Poyson had failed to establish a history of substance abuse by a preponderance of the evidence. *See Poyson*, 7 P.3d at 90. The court's treatment of Poyson's substance abuse evidence thus was not contrary to *Eddings*.

3. *On De Novo Review, Poyson Has Shown the Arizona Supreme Court Applied an Unconstitutional Causal Nexus Test*

Because AEDPA is satisfied, we review Poyson's constitutional claim de novo. *See Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc). We begin by asking whether Poyson has shown a constitutional violation. If Poyson has made this showing, we consider whether he was prejudiced under *Brecht v. Abrahamson*, 507 U.S. 619 (1993).

Poyson has satisfied the first part of this inquiry. The Supreme Court's decisions in *Tennard v. Dretke*, 542 U.S. 274, 287 (2004), *Smith v. Texas*, 543 U.S. 37, 45 (2004) (per curiam), *Lockett*, *Eddings* and *Penry* all prohibit a state from requiring a defendant to prove a nexus between mitigating evidence and the crime. As discussed above, the Arizona

Supreme Court violated this rule in Poyson's case. Poyson has therefore established that the Arizona Supreme Court applied an unconstitutional causal nexus test to evidence of his troubled childhood and mental health issues.

### 4. *Poyson Was Prejudiced*

"The harmless-error standard on habeas review provides that 'relief must be granted' if the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *McKinney*, 813 F.3d at 822 (quoting *Brecht*, 507 U.S. at 623). "There must be more than a 'reasonable possibility' that the error was harmful." *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015) (quoting *Brecht*, 507 U.S. at 637). "[T]he court must find that the defendant was actually prejudiced by the error." *Id.* (quoting *Calderon v. Coleman*, 525 U.S. 141, 146 (1998) (per curiam)). Under this standard:

> [I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

*McKinney*, 813 F.3d at 822 (alteration in original) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)). Accordingly, "[w]hen a federal judge in a habeas proceeding

is in grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless. And, the petitioner must win." *Id.* (alteration in original) (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)).

Our analysis once again is guided by *McKinney*, where we held the causal nexus error was prejudicial under circumstances similar to those presented here. *See id.* at 822–24. Here, as in *McKinney*, there were three aggravating factors – pecuniary gain; especially cruel, heinous or depraved murders; and multiple homicides. *See Poyson*, 7 P.3d at 87–88; *McKinney*, 813 F.3d at 823. Here, as in *McKinney*, the improperly disregarded evidence concerned the defendant's traumatic childhood and mental health issues. *See Poyson*, 7 P.3d at 90–91; *McKinney*, 813 P.3d at 819.

As in *McKinney*, moreover, the evidence of a traumatic childhood in this case was particularly compelling. Both of Poyson's parents abused drugs and alcohol at the time of his conception. His mother used LSD on a daily basis. She continued to abuse drugs and alcohol – including daily use of LSD – while she was pregnant with Poyson. Poyson never knew his biological father, an alcoholic. During his childhood, his mother was in relationships with many different men, and Poyson lacked a stable home life. One of these men, Guillermo Aguilar, physically and mentally abused Poyson, subjecting Poyson to repeated beatings. Aguilar brutally whipped Poyson with an electrical cord, and he eventually was sent to jail for abusing Poyson and his siblings. Others of these men abused drugs and alcohol. One even drank and did drugs with Poyson.

Poyson also suffered a number of physical and developmental problems as a child. He was developmentally delayed in areas such as crawling, walking and speaking. He had a speech impediment, fell behind in school and received special education services. He sustained several head injuries. Once, when he and his brother were playing, he had a stick impaled in his head. He suffered severe headaches, and passed out unconscious on several occasions. He was involuntarily intoxicated as a young child. He was subjected to physical abuse not only by Aguilar but also by his mother, who once hit him so hard it dislodged two teeth, and in particular by his maternal grandmother, Mary Milner, who beat him repeatedly and savagely.

When Poyson was 10 or 11 years old, he suffered two traumatic events that, according to witnesses at Poyson's sentencing, forever changed his life. Of the many adult men in Poyson's life, Poyson was close with just one of them, Sabas Garcia, his stepfather and the one true father figure Poyson ever had. When Poyson was 10 or 11, however, Sabas committed suicide by shooting himself in the head. Poyson was devastated by Sabas' death, which changed Poyson completely. He became distant, spending time away from home. He didn't care anymore. He began using and abusing drugs and alcohol, and he began having behavioral problems. His contacts with law enforcement also began at this time, and his performance in school suffered dramatically. Before Sabas' death, Poyson had overcome his earlier developmental challenges to become an A or B student, but after Sabas' death he began receiving Cs, Ds and Fs, and he eventually dropped out of school. His family life became even less stable. He bounced around from relative to relative, living from time to time with his mother, an aunt, his grandmother and another stepfather. Shortly after Sabas'

death, moreover, Poyson suffered a second severe trauma in his life when he was lured to the home of a childhood friend and violently raped. The attacker threw Poyson face down on a bed and brutally sodomized him.

Under the circumstances of this case, which closely track those in *McKinney*, we conclude the Arizona Supreme Court's application of an unconstitutional causal nexus test "had a 'substantial and injurious effect or influence' on its decision to sentence [Poyson] to death." *McKinney*, 813 F.3d at 824 (quoting *Brecht*, 507 U.S. at 623).

## B. Failure to Consider Substance Abuse

At sentencing, Poyson presented evidence of a history of drug and alcohol abuse, but the state trial court and the state supreme court declined to treat the evidence as a nonstatutory mitigating factor. The trial court found Poyson had presented only "very vague allegations that he has used alcohol . . . or . . . drugs in the past," and found "very little to support the allegation that the defendant has a significant alcohol and/or drug abuse" history. The supreme court agreed that Poyson's claims to have "used drugs or alcohol in the past" were "little more than 'vague allegations.'" *Poyson*, 7 P.3d at 90.

Poyson contends the state courts' conclusions that he provided only "vague allegations" of substance abuse were unreasonable determinations of the facts under 28 U.S.C. § 2254(d)(2) and violated his constitutional rights under *Lockett*, 438 U.S. at 605, *Eddings*, 455 U.S. at 112, and *Parker v. Dugger*, 498 U.S. 308, 321 (1991). We disagree.

Poyson's claim – that "[b]ecause his death sentence is based upon [an] unreasonable determination of facts, [he] is

entitled to habeas relief" – misunderstands the law. Even assuming that the state courts' determination that Poyson provided only "vague allegations" of substance abuse was an unreasonable determination of the facts under § 2254(d)(2), an issue we need not reach, Poyson's claim fails because he cannot demonstrate his constitutional rights were violated. *See Wilson v. Corcoran*, 562 U.S. 5–6 (2010) (per curiam) (holding that although § 2254(d)(2) relieves a federal court of AEDPA deference when the state court makes an unreasonable determination of facts, it "does not repeal the command of § 2254(a) that habeas relief may be afforded to a state prisoner 'only on the ground' that his custody violates federal law"); *see also Frantz v. Hazey*, 533 F.3d 724, 737 (9th Cir. 2008) (en banc) (holding AEDPA does not "require any particular methodology for ordering the § 2254(d) and § 2254(a) determination[s]"). An unreasonable determination of the facts would not, standing alone, amount to a constitutional violation under *Lockett*, *Eddings* or *Parker*.

*Lockett* invalidated an Ohio death penalty statute that precluded the sentencer from considering aspects of the defendant's character or record as a mitigating factor. *See* 438 U.S. at 604. *Eddings* held that a sentencer may not refuse to consider, as a matter of law, any relevant mitigating evidence. *See* 455 U.S. at 113–15. Here, the state courts considered Poyson's evidence of substance abuse, but found it wanting as a matter of fact and that Poyson failed to prove a history of substance abuse. Thus, there was no constitutional violation under *Lockett* and *Eddings*.

Nor has Poyson shown a constitutional violation under *Parker*. There, the state supreme court reweighed aggravating and mitigating circumstances before affirming a death sentence. *See Parker*, 498 U.S. at 321–22. The court's

reweighing, however, was premised on its erroneous assumption that the state trial court had found that there were no mitigating circumstances. *See id.* The Supreme Court held the state supreme court's action deprived the defendant of "meaningful appellate review," and thus that the sentencing violated the defendant's right against "the arbitrary or irrational imposition of the death penalty." *Id.* at 321. In Poyson's view, *Parker* stands for the broad proposition that, "[w]hen a state court's imposition of the death penalty is based not on the characteristics of the accused and the offense but instead on a *misperception of the record*, the defendant is not being afforded the consideration that the Constitution requires." In *Parker*, however, the state supreme court had misconstrued the state trial court's findings, something that did not occur here. *Parker* does not hold that a state court's erroneous factual finding in assessing mitigation evidence necessarily amounts to a constitutional violation. Rather, it suggests the opposite:

> This is not simply an error in assessing the mitigating evidence. Had the Florida Supreme Court conducted its own examination of the trial and sentencing hearing records and concluded that there were no mitigating circumstances, a different question would be presented. Similarly, if the trial judge had found no mitigating circumstances and the Florida Supreme Court had relied on that finding, our review would be very different.

*Id.* at 322.

In sum, we hold Poyson is not entitled to habeas relief, because he has not shown a constitutional violation under *Lockett*, *Eddings* or *Parker*. Because Poyson has raised arguments under only *Lockett*, *Eddings* and *Parker*, we need not decide whether, or under what circumstances, a state court's erroneous factfinding in assessing mitigating evidence can itself rise to the level of a constitutional violation.

## C. Penalty Phase Ineffective Assistance of Counsel

In his federal habeas petition, Poyson argued he received ineffective assistance of counsel during the penalty phase of his trial because his trial counsel failed to investigate the possibility that he suffered from fetal alcohol spectrum disorder (FASD). The district court ruled Poyson failed to present this claim to the state courts, and hence that the claim was procedurally defaulted. Poyson challenges that ruling on appeal. We review de novo. *See Robinson*, 595 F.3d at 1099.

A state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus. *See Picard v. Connor*, 404 U.S. 270, 275 (1971); *Weaver v. Thompson*, 197 F.3d 359, 363–64 (9th Cir. 1999); 28 U.S.C. § 2254(b)(1)(A). This rule "reflects a policy of federal-state comity, an accommodation of our federal system designed to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard*, 404 U.S. at 275 (citations and internal quotation marks omitted). "A petitioner can satisfy the exhaustion requirement by providing the highest state court with a fair opportunity to consider each issue before presenting it to the federal court." *Weaver*, 197 F.3d at 364.

"[A] petitioner may provide further facts to support a claim in federal district court, so long as those facts do not 'fundamentally alter the legal claim already considered by the state courts.'" *Lopez v. Schriro*, 491 F.3d 1029, 1040 (9th Cir. 2007) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986)).[6] "[T]his rule allows a petitioner who presented a particular [ineffective assistance of counsel] claim, for example that counsel was ineffective in presenting humanizing testimony at sentencing, to develop additional facts supporting that particular claim." *Moormann v. Schriro*, 426 F.3d 1044, 1056 (9th Cir. 2005) (citing *Weaver*, 197 F.3d at 364). "This does not mean, however, that a petitioner who presented any ineffective assistance of counsel claim below can later add unrelated alleged instances of counsel's ineffectiveness to his claim." *Id.* (citing *Carriger v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992) (en banc)).

1. *State Proceedings*

In his state habeas petition, Poyson raised two ineffective assistance of counsel claims relevant here. In the first claim, Poyson alleged trial counsel "was ineffective because he failed to request the appointment of experts in the field of mental health early in the case." He alleged the investigation for both phases of the trial should have begun "immediately" upon counsel's appointment, including "the immediate appointment of experts for both parts of the trial." Counsel's failure "to immediately secure the appointment of mental health experts . . . prejudiced" him in two ways. First, it

---

[6] For purposes of review under 28 U.S.C. § 2254(d)(1), factual allegations must be based on the "record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

precluded him from presenting a defense of "diminished capacity" with respect to the Delahunt murder during the guilt phase of the trial. Second, "the failure of counsel to immediately pursue mitigation caused the loss of mitigating information" that could have been presented at sentencing. Poyson presented a report by a neuropsychologist retained during the state habeas proceedings, Robert Briggs, Ph.D. According to Poyson, Briggs' report showed Poyson "was brain-damaged" at the time of the murders, but had since "recovered, due to his long stay first in jail, then on condemned row, without chemical or physical insult to his brain." In Poyson's view, "the report leaves no doubt that neurophyschological testing shows that he was impaired at the time of the crime." This mitigating evidence had been "lost forever."

In the state petition's second claim, Poyson alleged trial counsel failed to properly present mitigation and psychological evidence because counsel "did nothing to show the trial court how [his] abusive childhood caused, or directly related to, [his] conduct during the murders." He alleged trial counsel were deficient because they were "required to make some attempt to correlate Mr. Poyson's physically and psychologically abusive background with his behavior," because "a connection between the two would be much more powerful in mitigation than the abuse standing alone."

## 2. *Federal Petition*

Poyson's federal petition presented a substantially different claim – counsel's failure to investigate Poyson's possible fetal alcohol spectrum disorder. Poyson alleged trial counsel were ineffective because they "failed to make any effort to investigate and develop" evidence that Poyson

suffered from FASD.  He alleged defense counsel "failed to investigate the obvious possibility that [he] suffered from FASD," made "no effort" to "pursue this fertile area of mitigation" and "ignored obvious evidence that [he] was exposed to drugs and alcohol *in utero*."  Poyson further alleged he was prejudiced by counsel's deficient performance:

> Their failure to adequately investigate and substantiate [evidence that Petitioner was exposed to drugs and alcohol *in utero*] profoundly prejudiced Petitioner.  Adequate explanation during the pre-sentence hearing of the effect of FASD on Petitioner's brain would likely have convinced the trial court that Petitioner had a lesser degree of culpability.

3. *Analysis*

The district court concluded the claim raised in the federal petition had not been fairly presented to the Arizona courts:

> This Court concludes that the claim asserted in the instant amended petition is fundamentally different than that presented in state court.  Petitioner's argument in support of [this claim] is based entirely on trial counsel's alleged failure to investigate and develop mitigation evidence based on Petitioner's *in utero* exposure to drugs and alcohol.   This version of Petitioner's sentencing [ineffective assistance of counsel] claim has never been presented to the Arizona

courts. While it is true that new factual allegations do not ordinarily render a claim unexhausted, a petitioner may not "fundamentally alter the legal claim already considered by the state courts." *Beaty v. Stewart*, 303 F.3d 975, 989–90 ([9th Cir.] 2002) (citing *Vasquez*, 474 U.S. at 260). To do so deprives the state court of "a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Vasquez*, 474 U.S. at 257. Here, Petitioner is not simply proffering additional evidentiary support for a factual theory presented to the state court. Rather, he is alleging an entirely new theory of counsel ineffectiveness; one that has not previously been presented in state court.

We agree. Poyson presented not only new facts in support of a claim presented to the state court, but also a fundamentally new theory of counsel's ineffectiveness – one that the Arizona courts lacked "a meaningful opportunity to consider." *Vasquez*, 474 U.S. at 257. The district court therefore properly dismissed Poyson's penalty phase ineffective assistance of counsel claim as procedurally defaulted.

## IV. CONCLUSION

We reverse the district court's judgment denying the writ of habeas corpus. We remand with instructions to grant the writ with respect to Poyson's sentence unless the state, within a reasonable period, either corrects the constitutional error in his death sentence or vacates the sentence and imposes a

lesser sentence consistent with law. *See McKinney*, 813 F.3d at 827. We do not reach Poyson's contention, raised for the first time in his supplemental briefing, that he is entitled to a new sentencing proceeding before a jury under *Ring v. Arizona*, 536 U.S. 584 (2002), *Hurst v. Florida*, 136 S. Ct. 616 (2016), and *Magwood v. Patterson*, 561 U.S. 320, 332 (2010).

**REVERSED AND REMANDED.**

\* \* \*

Poyson's motion for reconsideration of our March 2013 order denying his motion for a remand under *Martinez v. Ryan*, 566 U.S. 1 (2012), is without merit. Our intervening decision to remand in *Dickens v. Ryan*, 740 F.3d 1302, 1320 (9th Cir. 2014) (en banc), did not change our holding in *Sexton v. Cozner*, 679 F.3d 1150, 1161 (9th Cir. 2012), that a remand is not required where, as here, the record is sufficiently complete for us to hold that counsel's representation was not ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984). The additional evidence Poyson offers does not show remand was necessary. That Dr. Robert Briggs was placed on and then removed from probation by the Arizona Board of Psychological Examiners does not change our previous conclusion that Poyson's postconviction relief counsel reasonably relied on Dr. Briggs, the retained neuropsychological expert who was aware of Poyson's exposure to drugs and alcohol in utero but did not advise counsel that Poyson suffered from fetal alcohol spectrum disorder. The motion (Dkt. 74) is therefore **DENIED**.

IKUTA, Circuit Judge, concurring:

Our en banc decision in *McKinney v. Ryan*, 813 F.3d 798 (9th Cir. 2015) (en banc) (*McKinney II*), erred in concluding that any *Eddings* error had a "substantial and injurious effect," *id.* at 822 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)), on the Arizona Supreme Court's decision to affirm the defendant's death sentence. *State v. McKinney*, 185 Ariz. 567, 917 P.2d 1214 (1996) (*McKinney I*). As a result, our decision today is wrongly decided. Nevertheless, as a three-judge panel, we are bound by *McKinney II* until either the Supreme Court or a future en banc panel overrules it. Therefore, I concur in the majority opinion and write separately only to point out how *McKinney II*'s error in applying *Brecht* infects our decision here.

I

Under AEDPA, we must determine whether the decision of the Arizona Supreme Court is contrary to or an unreasonable application of clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). It is clearly established that a sentencer may not "refuse to consider, *as a matter of law*, any relevant mitigating evidence." *Eddings v. Okla.*, 455 U.S. 104, 114 (1982) (italics in original); *see also Lockett v. Ohio*, 438 U.S. 586, 604 (1978). While the sentencer "may determine the weight to be given relevant mitigating evidence," it "may not give it no weight by excluding such evidence from [its] consideration." *Eddings*, 455 U.S. at 114–15. Applying *Lockett* and *Eddings*, the Supreme Court held that a state cannot adopt a "causal nexus" rule, that is, a rule precluding a sentencer from considering mitigating evidence unless there is a causal nexus between that evidence and the crime. *Tennard v. Dretke*, 542 U.S.

274, 287 (2004). The sentencer may, however, consider "causal nexus . . . as a factor in determining the weight or significance of mitigating evidence." *Lopez v. Ryan*, 630 F.3d 1198, 1204 (9th Cir. 2011) *overruled on other grounds by McKinney II*, 813 F.3d at 819.

In this case, the Arizona Supreme Court stated only that it accorded no mitigating weight to Poyson's evidence of mental health and an abusive childhood. *State v. Poyson*, 198 Ariz. 70, 81–82 (2000). Before *McKinney II*, we held that this decision was not an unreasonable application of *Lockett*, *Eddings*, and *Tennard* because we could not presume that the Arizona Supreme Court had refused to consider the mental health and abusive childhood evidence as a matter of law. *See Poyson v. Ryan*, 711 F.3d 1087, 1090 (9th Cir. 2013). Rather, as instructed by the Supreme Court, we adopted the "presumption that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002); *see Poyson*, 711 F.3d at 1099.

*McKinney II* flipped this presumption. It held that we must presume the Arizona Supreme Court applied the unconstitutional causal nexus test between 1989 and 2005, even when, as here, the court expressly discussed the weight of the evidence. 813 F.3d at 803, 809, 816. This reasoning is contrary to *Visciotti*, as the *McKinney II* dissent made clear. *See McKinney II*, 813 F.3d at 827–850 (Bea, J., dissenting). No further elaboration of this error is needed.

## II

I write separately to highlight *McKinney II*'s second error: its conclusion that a causal nexus error has a "substantial and

injurious effect" on a state court's decision.  813 F.3d at 822–23.

## A

Under *Brecht*, even if a state court unreasonably errs in applying Supreme Court precedent, a federal court may not provide habeas relief unless the error had a "substantial and injurious effect." 507 U.S. at 623.  "There must be more than a 'reasonable possibility' that the error was harmful." *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015) (quoting *Brecht*, 507 U.S. at 637).  Rather, a "court must find that the defendant was actually prejudiced by the error." *Id.* (quoting *Calderon v. Coleman*, 525 U.S. 141, 146 (1998) (per curiam)).  Even an *Eddings* error may be harmless. *Greenway v. Ryan*, 866 F.3d 1094, 1100 (9th Cir. 2017) (per curiam).

In determining that the Arizona Supreme Court's presumed causal nexus error in *McKinney I* was prejudicial, *McKinney II* failed to provide a reasoned or reasonable application of *Brecht*.  Instead, without any meaningful analysis, *McKinney II* conclusorily held that the evidence presumed excluded under Arizona's presumed causal nexus test "would have had a substantial impact on a capital sentencer who was permitted to evaluate and give appropriate weight to it as a nonstatutory mitigating factor." *McKinney II*, 813 F.3d at 823.  Therefore, *McKinney II* held, the Arizona Supreme Court's "application of the test had a 'substantial and injurious effect or influence' on its decision to sentence [the defendant] to death." *Id.* at 823–24 (quoting *Brecht*, 507 U.S. at 623).  In reaching this conclusion, *McKinney II* came close to enunciating a per se rule that when a state

court's application of a causal nexus test excludes mitigating evidence, such an error will not be harmless.

Such a quasi per se rule may be plausible when the sentencer in a particular case is a jury. If a state rule excludes certain mitigating evidence from the jury's consideration as a matter of law, either the evidence will not be presented to the jury or the jury will be instructed to disregard it if they find no causal nexus. Because we presume a jury follows its instructions, *Penry v. Johnson*, 532 U.S. 782, 799 (2001), and a jury generally does not give reasons for its decision, it is reasonable to presume that the jury could not meaningfully consider even strong mitigating evidence in reaching its verdict if it were excluded under a causal nexus rule, *see Abdul-Kabir v. Quarterman*, 550 U.S. 233, 255 (2007). A court could determine that strong mitigating evidence which was excluded from consideration "would have had a substantial impact on a capital sentencer who was permitted to evaluate and give appropriate weight to it as a nonstatutory mitigating factor." *McKinney II*, 813 F.3d at 823. Accordingly, in the absence of other factors (such as the presence of aggravating factors that "overwhelmingly outweighed" the mitigating evidence, *see Greenway*, 866 F.3d at 1100), an *Eddings* error could have a substantial and injurious effect.

But the quasi per se rule adopted by *McKinney II* is entirely implausible when the sentencer is a state supreme court. Unlike a jury, a state supreme court has the authority to review and consider all the evidence in the record; this is particularly important, when as in Arizona, the state supreme court "reviews capital sentences de novo, making its own determination of what constitute legally relevant aggravating and mitigating factors, and then weighing those factors

independently." *McKinney II*, 813 F.3d at 819 (citing Ariz. Rev. Stat. Ann. § 13-755). A state supreme court's decision that certain categories of evidence are not mitigating is effectively the court's conclusion that such evidence does not merit much weight. Just like a jury, a state supreme court can reasonably conclude that if a defendant's mental impairments did not play a part in causing the defendant to commit a brutal offense, the impairments do not mitigate the defendant's behavior.

A state supreme court's conclusion about the mitigating weight of various types of evidence does not have the effect of excluding evidence as a matter of law. Nor does such a conclusion preclude a state supreme court from weighing the evidence differently in a different case. While a jury must follow instructions, the state court is free to disregard its instructions to itself because a state supreme court may always revisit its precedent. As the Arizona Supreme Court has explained, "while we should and do pay appropriate homage to precedent, we also realize that we are not prisoners of the past." *Lowing v. Allstate Ins. Co.*, 176 Ariz. 101, 107 (1993) (quoting *Wiley v. The Indus. Comm'n of Ariz.*, 174 Ariz. 94, 103 (1993)). Indeed, even *McKinney II* acknowledged that by the mid-2000s, the Arizona Supreme Court had stopped applying the precedent that *McKinney II* presumed compelled the use of a causal nexus test. 813 F.3d at 817.

Finally, unlike a jury, a state supreme court generally explains its reasons, and so may articulate its conclusion that defendant's impairments merited little or no mitigating weight. *See Greenway*, 866 F.3d at 1100. Where a state supreme court has reached a reasoned conclusion that aggravating circumstances outweigh mitigating evidence in

a particular case, there does not seem to be a reasonable possibility that the state supreme court would reach a different result merely because a federal court announces that the state court has secretly maintained an unconstitutional causal nexus rule all along. *See id.*

B

Because *McKinney II* failed to distinguish between a state supreme court and a jury, its *Brecht* analysis fails.

In *McKinney I*, the Arizona Supreme Court explained that it "conducts a thorough and independent review of the record and of the aggravating and mitigating evidence to determine whether the sentence is justified, . . . consider[ing] the quality and strength, not simply the number, of aggravating or mitigating factors." 185 Ariz at 578. In its opinion, the Arizona Supreme Court reviewed the defendant's evidence of childhood abuse and post-traumatic stress disorder (PTSD). *Id.* at 587. It determined that the judge had fully considered evidence from several witnesses that defendant had "endured a terrible childhood," as well as the PTSD diagnosis. *Id.* But the court held that "a difficult family background, including childhood abuse, does not necessarily have substantial mitigating weight absent a showing that it significantly affected or impacted the defendant's ability to perceive, comprehend, or control his actions." *Id.* After considering the defendant's abusive childhood and its impact on his behavior and ability to conform his conduct, the Arizona Supreme Court found there was no error in determining that the evidence of childhood abuse was "insufficiently mitigating to call for leniency." *Id.*

In light of the Arizona Supreme Court's reasoned consideration and weighing of the mitigating evidence, there was no basis for concluding that this same evidence would have a different impact – let alone a substantial impact – on the same court on resentencing simply because a federal court provides a reminder that *Eddings* precludes a sentencer from applying the causal nexus rule. *McKinney II*, 813 F.3d at 823–24. *Brecht* does not permit "mere speculation" about the potential prejudice to a defendant. *Davis*, 135 S. Ct. at 2198 (quoting *Calderon* 525 U.S. at 146). Because there is not a reasonable possibility that the presumed legal error influenced the Arizona Supreme Court, or have more than a slight effect, the sentence should stand. *See Kotteakos v. United States*, 328 U.S. 750, 764 (1946); *Davis*, 135 S. Ct. at 2198. *McKinney II* erred in ruling otherwise.

III

Because we are bound by *McKinney II*'s erroneous application of *Brecht*, its error infects this appeal as well. In our case, the Arizona Supreme Court considered Poyson's mitigating evidence regarding his mental health and abusive childhood, but stated merely that it accorded these factors "no mitigating weight." *Poyson*, 198 Ariz. at 81–82. On the other hand, the Arizona Supreme Court found that the evidence supported aggravating circumstances of (1) pecuniary gain, (2) especially cruel, heinous, or depraved murder, and (3) multiple homicide. *Id* at 78–79. Based on its findings, the court upheld Poyson's death sentence. *Id* at 82. The court did so while performing its duty to "independently review and reweigh the aggravating and mitigating circumstances in every capital case . . . ." *Id.* at 81.

Here, the Arizona Supreme Court reviewed and considered Poyson's mitigating evidence, and balanced it against the case's aggravating circumstances. Accordingly, there is no basis for concluding that our correction of any presumed *Eddings* error "would have had a substantial impact on a capital sentencer who was permitted to evaluate and give appropriate weight to it as a nonstatutory mitigating factor." *McKinney II*, 813 F.3d at 823. We should therefore conclude that any presumed causal nexus error was not prejudicial, and therefore Poyson is not entitled to relief.

Because we are bound by *McKinney II* (at least for the time being), we are unable to reach this correct conclusion. As a result, I reluctantly concur in the majority opinion.