**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

ERNESTO SALGADO MARTINEZ,
*Petitioner-Appellant*,

v.

CHARLES L. RYAN,
*Respondent-Appellee.*

No. 08-99009

D.C. No.
2:05-cv-01561-EHC

OPINION

Appeal from the United States District Court
for the District of Arizona
Earl H. Carroll, District Judge, Presiding

Argued and Submitted March 27, 2019
San Francisco, California

Filed June 18, 2019

Before: M. MARGARET McKEOWN, WILLIAM A.
FLETCHER, and MILAN D. SMITH, JR., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

## SUMMARY[*]

### Habeas Corpus / Death Penalty

The panel affirmed the district court's denial of a writ of habeas corpus as to Ernesto Martinez's claims relating to his first-degree murder conviction and death sentence, dismissed for lack of jurisdiction Martinez's claim appealing the district court's denial of his request to consider a Fed. R. Civ. P. 60(b) motion, declined to expand the certificate of appealability, and denied Martinez's motion to stay the appeal and remand for consideration of another claim under *Brady v. Maryland*.

The panel held that Rule 32.2(a) of the Arizona Rules of Criminal Procedure, pursuant to which the Arizona post-conviction review court imposed a procedural default as to Martinez's judicial bias claim, is independent of federal law and adequate to warrant preclusion of federal review; and that Martinez failed to demonstrate cause to overcome the procedural default of that claim.

The panel held that because Martinez's judicial bias claim is based on unfounded speculation, (1) his trial counsel did not perform deficiently by not moving for the trial judge's recusal, and (2) his appellate counsel was not ineffective for failing to raise on direct appeal the claim that trial counsel was ineffective for failing to move to disqualify the trial judge.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that Martinez did not establish cause and prejudice to overcome his procedural default of his claim that the prosecution violated *Brady v. Maryland* by failing to disclose impeachment evidence about a prosecution witness.

The panel dismissed for lack of jurisdiction Martinez's claim appealing the district court's procedural ruling declining to consider Martinez's Rule 60(b) motion to alter or amend the judgment.

The panel denied Martinez's claims relating to the jury instruction on pre-meditation. The panel wrote that the instruction properly conveyed to the jury that Martinez could not be found guilty of first-degree murder if it believed he acted impulsively. The panel held that even if the instruction was somehow erroneous, Martinez did not show that the instruction so infected the entire trial that the resulting conviction violated due process. Considering the totality of the circumstances, the panel held that an oral hiccup by the trial court likewise did not cause the conviction to violate due process.

The panel held that trial counsel's failure to retain an independent pathologist to impeach a prosecution expert's testimony did not prejudice Martinez; that Martinez therefore cannot establish under *Martinez v. Ryan* that his post-conviction-review counsel was ineffective for failing to raise the claim that trial counsel's failure to retain a pathologist amounted to ineffective assistance; and that, as a result, Martinez failed to overcome the procedural default on that claim.

Because of the overwhelming evidence introduced at sentencing that Martinez could appreciate the wrongfulness of his conduct, the panel concluded that Martinez did not

establish prejudice, and thus cannot overcome the procedural default of his claim that trial counsel was ineffective by failing to recall an expert at sentencing to rebut testimony by another expert retained by the prosecution.

The panel held that under *Eddings v. Oklahoma*, the Arizona Supreme Court applied an unconstitutional causal nexus test in concluding that Martinez's family history is not entitled to weight as a mitigating factor at sentencing. The panel determined that Martinez was not prejudiced by the Arizona Supreme Court's constitutional error.

The panel declined to expand the COA to include a *Brady* claim that relates to evidence of premeditation.

Because Martinez cannot establish materiality, the panel denied Martinez's motion to stay the appeal and to remand for the district court to consider a weekly planner belonging to a prosecution witness.

## COUNSEL

Timothy M. Gabrielson (argued), Assistant Federal Public Defender; Jon M. Sands, Federal Public Defender; Office of the Federal Public Defender, Tucson, Arizona; for Petitioner-Appellant.

Julie Ann Done (argued), Assistant Attorney General; Lacey Stover Gard, Chief Counsel; Mark Brnovich, Attorney General; Office of the Attorney General, Phoenix, Arizona; for Respondent-Appellee.

# OPINION

M. SMITH, Circuit Judge:

After being pulled over for speeding in Payson, Arizona, Ernesto Martinez fatally shot Arizona Department of Public Safety Officer Robert Martin. A jury convicted Martinez of, among other crimes, first-degree murder. He was sentenced to death.

Martinez appeals the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. We affirm. We also deny Martinez's motion to stay the appeal and decline to remand the case for consideration of another *Brady* claim.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The Murder of Officer Martin

In August 1995, Martinez stole a blue Monte Carlo and used it to drive from California to Arizona. Martinez met with his friend, Oscar Fryer, in Globe, Arizona "shortly before the [murder] of" Officer Martin.[1]

Fryer and Martinez spoke in Martinez's car for about thirty minutes. Fryer asked Martinez where he had been; Martinez responded that he had been in California. Fryer asked Martinez if he was still on probation; Martinez responded that he was, and that he had a warrant out for his

---

[1] Oscar Fryer did not remember exactly when he met with Martinez. The sentencing court stated that Martinez met with Fryer "three days before the murder," but nothing in the record supports that claim.

arrest. Martinez told Fryer that he had come to Arizona to visit friends and family.

While in the car with Fryer, Martinez removed a .38 caliber handgun with black tape wrapped around the handle from underneath his shirt and showed it to Fryer. Fryer asked Martinez why he had the gun; Martinez responded that it was "[f]or protection and if shit happens."

As Martinez was showing the gun to Fryer, they spotted a police officer in the area. Fryer asked Martinez what he would do if he was stopped by the police. Martinez responded that "he wasn't going back to jail."

Following that conversation, Martinez drove from Globe to Payson on a stretch of State Route 87—better known as the Beeline Highway. Several witnesses testified to having seen Martinez and his car around Payson that morning.

Susan and Steve Ball were among those witnesses. Martinez tailgated them on the Beeline Highway "for a long time" before passing their car "very quickly on the left-hand side." Shortly after that, the Balls saw Martinez's car pulled over to the side of the road, with a police car stopped behind him and a police officer standing outside the driver's side door. As they drove by, they said to each other that it was "good" that the driver "got the speeding ticket."

But shortly after the Balls saw Martinez's car pulled over, "the same blue car passe[d] [them] on the left-hand side going very quickly." The couple found it "very strange" because "there was no time [for the driver] to have gotten a speeding ticket." When Martinez's car ran a red light, the Balls knew that "[s]omething [was] going on."

The Balls were suspicious for good reason. After being pulled over for speeding by Officer Martin, and after the Balls had passed Martinez's car, Martinez shot Officer Martin four times with a .38 caliber handgun—the same gun he had shown Fryer days earlier. The bullets struck Officer Martin's right hand, neck, back, and head. The back and head wounds were fatal.

After shooting Officer Martin, Martinez stole Officer Martin's .9mm Sig Sauer service weapon and continued driving down the Beeline Highway. The Balls wrote down Martinez's license plate number when they spotted his car again.**[2]**

Martinez was arrested in Indio, California the day after the murder of Officer Martin. Hours after his arrest, Martinez called Mario Hernandez, a friend. After Hernandez passed the phone to his brother, Eric Moreno, Martinez laughingly told Moreno that "he got busted for blasting a jura"—a slang term in Spanish for a police officer.

## II. Conviction

Martinez was charged with one count of first-degree murder, two counts of theft, and two counts of misconduct involving weapons. Judge Jeffrey Hotham of the Superior Court in Maricopa County, Arizona presided over the guilt phase of Martinez's trial. The jury returned a verdict of guilty on all accounts.

---

**[2]** Hours after murdering Officer Martin, Martinez robbed a convenience store in Blythe, California, and fatally shot the store clerk. Martinez's convictions and sentences for that robbery and murder, however, are not before us.

### III.     Sentencing and Direct Appeal

Before sentencing, Martinez filed a motion for change of judge for cause.  Another judge—Judge Ronald Reinstein, the presiding judge of the Criminal Division—heard the motion.  Martinez argued that recusal was warranted because Judge Hotham's bailiff was friends with Officer Martin's widow.

Judge Reinstein granted the motion.  He stated that Martinez had demonstrated no prejudice resulting from Judge Hotham presiding over his case.  Because "death is different," however, Judge Reinstein concluded that "the better course to follow for all concerned is to assign another judge to the sentencing."

Judge Christopher Skelly, the sentencing judge, imposed a sentence of death.  Martinez's convictions and sentence were affirmed by the Arizona Supreme Court on direct appeal.

### IV.     State Postconviction Review

Martinez filed a post-conviction review (PCR) petition challenging his conviction and sentence.  Judge Hotham, who had been assigned the PCR petition, denied it.  The Arizona Supreme Court denied discretionary review.

### V. Federal Habeas Corpus Proceedings

Martinez filed a federal habeas petition in the district court.  The district court denied the petition.  The court also denied Martinez's motion to alter or amend judgment and to expand the certificate of appealability (COA).  Martinez filed a notice of appeal.

After completion of appellate briefing, Martinez filed several motions, requesting that we: (1) stay the appeal and remand to the district court on three claims based on our decision in *Martinez v. Schriro*, 623 F.3d 731 (9th Cir. 2010); (2) stay the appeal and remand to the district court pursuant to *Townsend v. Sain*, 372 U.S. 293 (1963), and *Quezada v. Scribner*, 611 F.3d 1165 (9th Cir. 2010); (3) stay the appeal and remand to the district court based on *Martinez v. Ryan*, 566 U.S. 1 (2012); and (4) grant leave to supplement his *Townsend*/*Quezada* motion.

We granted Martinez's motion to remand pursuant to *Martinez v. Ryan*. We also granted Martinez's motion to remand pursuant to *Townsend*/*Quezada*, construing it as "a motion for leave to file in the district court a renewed request for indication whether the district court would consider a rule 60(b) motion for reconsideration of Claim 4 and for consideration of a possible *Brady-Napue* claim in light of newly discovered evidence." Accordingly, we stayed appellate proceedings.

On remand, the district court declined Martinez's invitation to entertain a Rule 60(b) motion. The court also denied his Confrontation Clause and ineffective assistance of counsel (IAC) claims, and denied a COA as to those claims.

Martinez filed a motion requesting that we expand the COA. We granted a COA as to all claims we had remanded and ordered the parties to file replacement briefs.

On appeal, Martinez raises eight certified claims and requests that we issue a COA for another *Brady* claim. Martinez also moves to stay the appeal and remand his case for the district court to consider another *Brady* claim.

## JURISDICTION AND STANDARD OF REVIEW

Because Martinez filed his petition for habeas corpus after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, we have jurisdiction over the certified claims pursuant to 28 U.S.C. § 2253.

We review de novo a district court's decision to deny a habeas petition under 28 U.S.C. § 2254. *Bean v. Calderon*, 163 F.3d 1073, 1077 (9th Cir. 1998). Under AEDPA, we may not grant habeas relief unless the state's adjudication of Martinez's claim (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court," (2) "involved an unreasonable application of" such law, or (3) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"In making this determination, we look to the last reasoned state court decision to address the claim." *White v. Ryan*, 895 F.3d 641, 665 (9th Cir. 2018) (citing *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018)). The PCR court's decision is the last reasoned state court decision addressing Martinez's judicial bias claim, his IAC claim for his counsel's failure to raise the judicial bias claim in state court, and his claim that the court's jury instructions were erroneous.

## ANALYSIS

### I.  Judicial Bias

Martinez's judicial bias claim stems from the relationship between Ron Mills, Judge Hotham's bailiff, and Sandy Martin, Officer Martin's widow. When the parties

learned of that relationship before trial, Martinez asked the court to replace Mills. The court held a hearing to consider that motion.

At the hearing, Mills testified that he had been Judge Hotham's bailiff for five years. He said that he had known Sandy Martin for over thirty years—from high school—and kept "close contact" with her and her late husband since then. Mills testified that he considered the Martins good friends, but that he had not attended Officer Martin's funeral.

Mills said that, at a pretrial hearing, he had gone up to Sandy Martin and "asked her how she was doing and put [his] arm around her, and . . . just expressed some pleasantries." Mills also testified, however, that he could "complete [his] duties as a bailiff and not influence the jury in any way" in Officer Martin's case. He said he had taken an oath "[t]o take care of the jury and not to divulge the deliberations or the verdict." He also testified that he would have no contact with the victims in the view of the jury and would "not [] in any fashion influence the jurors by way of [his] personal feelings about a case."

The court denied Martinez's motion to replace Mills. Judge Hotham reasoned that he had "the greatest confidence in my bailiff, Mr. Mills," that he had "specifically already admonished him about his responsibilities," and that he was "confident that [Mills] is going to be able to [abide by them]."

During the trial, the court excluded Mills from the courtroom during a portion of an expert's testimony. At a recess (during which the jury was not present), Judge Hotham explained to the parties that "due to defense counsel's concerns about my bailiff . . . I requested [him] not to be present during the autopsy report of [the expert] so that

no one could ever later question that my bailiff reacted to the gory photographs in any inappropriate manner and that that would have some effect on the jury."

Martinez argues that the PCR court erred in holding that his judicial bias claim was procedurally defaulted. He contends, in the alternative, that even if his judicial bias claim is procedurally defaulted, he has demonstrated cause and prejudice to overcome that default.

## A. Independent and Adequate State Ground

Federal courts generally cannot review a habeas petitioner's claim if the "state court declined to address a prisoner's federal claim[] because the prisoner had failed to meet a state procedural requirement." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991). The procedural bar on which the state court relies must be independent of federal law and adequate to warrant preclusion of federal review. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).

The PCR court "explicitly impose[d] a procedural default," *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991), by stating that Martinez "waived [his judicial bias claim] by failing to appeal [it]" and citing Rule 32.2(a)(3) of the Arizona Rules of Criminal Procedure. Martinez does not dispute that Arizona's preclusion rule is independent of federal law. *See Stewart v. Smith*, 536 U.S. 856, 860 (2002) (per curiam). Nor does he dispute that Arizona's preclusion rule is an adequate bar to federal review of a claim. *See Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir. 1998), *overruled on other grounds by Martinez v. Ryan*, 566 U.S. 1 (2012); *Poland v. Stewart*, 117 F.3d 1094, 1106 (9th Cir. 1997).

Instead, Martinez argues that Rule 32.2(a) was not adequate because the PCR court misinterpreted the scope of

the rule. He contends that "Arizona's preclusion rules simply do not apply where there were insufficient facts on the record to have raised the claim on direct appeal." Because "Martinez's substantive judicial bias claim depended on facts [outside] the record," he argues that Rule 32.2(a) did not require him to raise that claim on direct appeal.

We lack jurisdiction to address that contention. *See Poland*, 169 F.3d 573, 584 (9th Cir. 1999) ("Federal habeas courts lack jurisdiction . . . to review state court applications of state procedural rules."); *accord Johnson v. Foster*, 786 F.3d 501, 508 (7th Cir. 2015) ( "[A] federal habeas court is not the proper body to adjudicate whether a state court correctly interpreted its own procedural rules, even if they are the basis for a procedural default."). And even if we did have jurisdiction, Martinez's argument fails because he was aware of the facts underlying his judicial bias claim before filing his direct appeal. Martinez conceded at oral argument that he learned of the relationship between Mills and Sandy Martin before trial. Indeed, Martinez cited that relationship as the reason Judge Hotham could not be "completely free of any improper emotion or bias" when he moved for a change of judge before sentencing—which was before he filed his direct appeal. Martinez was present during trial when Judge Hotham told the parties that he had asked his bailiff to remain outside the courtroom during Dr. Keen's testimony. These facts belie the suggestion that Martinez could not have raised his judicial bias claim on direct appeal.

Rule 32.2(a) is independent of federal law and adequate to warrant preclusion of federal review. Accordingly, we may not review Martinez's judicial bias claim unless he establishes cause and prejudice.

## B.  Cause and Prejudice

There is a narrow exception to the general rule outlined above if the habeas petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.  Martinez presents four arguments to establish cause for why he did not raise his judicial bias claim on direct appeal.  We reject all of them.

Martinez's first argument is part and parcel of an argument we have already addressed: He contends that he can establish cause because "Judge Hotham's ongoing failure to comply with his ethical dut[ies] . . . constituted facts not reasonably available with which to ask for the judge's recusal at trial or to raise the claim on direct appeal." That argument falls short because, as we explain above, Martinez knew of, and objected to, Judge Hotham's alleged biased conduct before he filed his direct appeal.  He cannot now claim ignorance.

Second, Martinez relies on a non-binding case, *Porter v. Singletary*, 49 F.3d 1483 (11th Cir. 1995), for the proposition that "a judge's [breach] of the canons governing judicial conduct constitutes 'cause' to excuse a procedural default of a judicial bias claim in state court."  *Porter*, however, does not support the weight that Martinez hoists on it.  There, the clerk of court submitted a declaration over a decade after the defendant's trial stating that "before or during [the] trial," the trial judge had said that "he would send [the defendant] to the chair."  *Porter*, 49 F.3d at 1487 (quoting declaration).  The court held that the defendant had established cause because he could not reasonably have been expected to discover the judge's statements to the clerk of

court before he filed his direct appeal. *Id.* at 1489. Here, by contrast, Martinez could have discovered—and did discover—the evidence that underlies his judicial bias claim before he filed his direct appeal. Unlike in *Porter*, Martinez has identified no evidence, such as "specific [statements] that the judge had a fixed predisposition to sentence this particular defendant to death if he were convicted by the jury," *id.*, that demonstrate Judge Hotham's alleged bias or impropriety. For these reasons, *Porter*'s reasoning does not support Martinez's argument for cause.

Third, Martinez argues that the ineffective assistance of his PCR counsel establishes cause. That argument lacks merit, however, because ineffective assistance of PCR counsel can constitute cause only to overcome procedurally defaulted claims of ineffective assistance of trial counsel. *See Martinez*, 566 U.S. at 9; *see also Trevino v. Thaler*, 569 U.S. 413, 429 (2013). We have rejected, and reject again, the argument that ineffective assistance of PCR counsel can establish cause to overcome procedurally defaulted claims of judicial bias. *See Pizzuto v. Ramirez*, 783 F.3d 1171, 1176–77 (9th Cir. 2015) ("[O]nly the Supreme Court could expand the application of *Martinez* to other areas.").

Martinez's fourth and final argument leapfrogs over the cause and prejudice analysis to reach the merits of his judicial bias claim. He contends that Judge Hotham's bias constituted structural error that automatically entitles him to habeas relief. But that argument misses the mark because we cannot reach the merits of Martinez's judicial bias claim unless he demonstrates cause and prejudice to overcome the procedural default of that claim. Because Martinez has failed to do so, we do not address the merits of his claim.

Martinez fails to demonstrate cause to overcome the procedural default of his judicial bias claim, so we need not address prejudice. We affirm the district court's denial of Martinez's judicial bias claim.

## II. Ineffective Assistance of Counsel (Judicial Bias)

Martinez argues that the PCR court unreasonably applied clearly established federal law when it denied his IAC claim based on trial counsel's failure to move to disqualify Judge Hotham for judicial bias. He also contends that his appellate counsel was ineffective for failing to raise the IAC claim on direct appeal. We reject both arguments.

To prevail on an IAC claim, the defendant must show both that counsel's performance was deficient, and that he suffered prejudice due to counsel's deficiency. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). On federal habeas review, "the question is not whether counsel's actions were reasonable[,]" but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). The Supreme Court has described this standard of review as "doubly" deferential. *Harrington*, 562 U.S. at 105.

Martinez's trial counsel did not perform ineffectively by not moving for Judge Hotham's recusal. Martinez's claim that Judge Hotham was biased lacks merit, and the "[f]ailure to raise a meritless argument does not constitute ineffective assistance." *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985).

A judicial bias claim requires facts sufficient to create actual impropriety or an appearance of impropriety. *Greenway v. Schriro*, 653 F.3d 790, 806 (9th Cir. 2011). Martinez does not point to anything in the record that

demonstrates actual impropriety by Judge Hotham. He contends that Judge Hotham's bailiff's relationship with Officer Martin's widow created an appearance of impropriety, but that argument is not supported by precedent. When asked at oral argument for a case in which a bailiff's relationship to the victim's family was found to have created an appearance of impropriety, Martinez could not provide an answer. The Supreme Court, for its part, has recognized an appearance of impropriety in only a few cases in which the judge had a direct pecuniary interest in the case, was involved in a controversy with a litigant, or was part of the accusatory process. *See, e.g.*, *Mayberry v. Pennsylvania*, 400 U.S. 455, 465–66 (1971) (judge whom the defendant had insulted presided over contempt proceedings); *In re Murchison*, 349 U.S. 133, 137 (1955) (judge acted as both the grand jury and the trier of the accused); *Tumey v. Ohio*, 273 U.S. 510, 532–34 (1927) (judge profited from every defendant he convicted). None of those circumstances existed here.

At bottom, Martinez's judicial bias claim is based on unfounded speculation. He contends that Judge Hotham's decision to remove his bailiff from the courtroom during an expert witness's testimony "was merely the first public manifestation as to how deep his bailiff's feelings ran and the judge's sympathy for his bailiff and his concern that the bailiff's feelings might spill over inappropriately." But Martinez's fanciful theory of bias cannot "overcome [the] presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). As Judge Hotham explained to the parties during trial, he asked Mills to remain outside the courtroom during an expert's testimony solely to prevent any later complaint that Mills "reacted to the gory photographs in any inappropriate manner."

Because Martinez's judicial bias claim lacks merit, his trial counsel did not perform deficiently by not moving for Judge Hotham's recusal.  *See Boag*, 769 F.2d at 1344. Martinez's claim that his appellate counsel deficiently performed likewise fails, for "appellate counsel's failure to raise issues on direct appeal does not constitute ineffective assistance when appeal would not have provided grounds for reversal."  *Wildman v. Johnson*, 261 F.3d 832, 840 (9th Cir. 2001).   We therefore affirm the district court's denial of Martinez's IAC claim.

## III.    Oscar Fryer *Brady* Claim

Before the district court, Martinez argued for the first time that the prosecution violated *Brady v. Maryland* by failing to disclose impeachment evidence about Fryer, a witness for the prosecution.  373 U.S. 83 (1963).  The district court denied the claim because Martinez did not establish cause and prejudice to overcome the procedural default of his *Brady* claim.  We agree.

Martinez argues that the prosecution violated its *Brady* obligations in two ways.  First, he argues that the prosecution failed to disclose that Fryer was using drugs when he testified at Martinez's trial.   Second, he argues that the prosecution withheld evidence of benefits they bestowed on Fryer in exchange for his testimony against Martinez.  He contends that the withheld evidence establishes cause and prejudice to overcome the procedural default of his *Brady* claim.

Cause and prejudice necessary to overcome the default of a *Brady* claim parallel the second and third elements of a *Brady* violation.  *See Banks v. Dretke*, 540 U.S. 668, 691 (2004).  Those elements are "[(2)] that evidence must have been suppressed by the State, either willfully or

inadvertently; and [(3)] prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 282 (1999). Thus, a petitioner establishes cause when the reason for his failure to bring a timely *Brady* claim is the government's suppression of the relevant evidence, and establishes prejudice when the suppressed evidence is material for *Brady* purposes. *Banks*, 540 U.S. at 691. Evidence is material "when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 470 (2009).

## A. Fryer's Illegal Drug Use

Martinez's first argument—that the government improperly withheld evidence of Fryer's drug use—relies on his allegation that Fryer was under the influence of methamphetamine on the day he testified against Martinez. That allegation stems from the following facts. On February 5, 1998, Fryer was charged with illegal drug use in Gila County, Arizona. On February 23, 1998, Fryer pleaded guilty to using amphetamine or methamphetamine between August 18–20 and between November 14–17, 1997. In a presentence report update filed on March 13, 1998, a probation officer wrote that Fryer "stated that he ha[d] been addicted to methamphetamine for at least the past 6 months. He got to where he was using up to 4 grams of methamphetamine a day." That statement, Martinez argues, demonstrates that Fryer was using methamphetamine on September 9, 1997—when Fryer testified against Martinez.

We acknowledge that evidence that a witness—especially one as critical to the prosecution's case as was Fryer—"was using drugs during the trial would reflect on his competence and credibility as a witness." *Benn v. Lambert*, 283 F.3d 1040, 1056 (9th Cir. 2002). But Martinez's *Brady* claim fails because he does not demonstrate that the

prosecution knew, or had a duty to know, of Fryer's drug use or his drug convictions before the end of Martinez's trial.

*Brady* claims apply in situations that "involve[] the discovery, after trial of information which *had been known* to the prosecution but unknown to the defense." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (emphasis added). If the prosecution does not discover, or does not have a duty to discover, certain evidence until after the trial ends, then there can be no *Brady* claim against it even if exculpatory evidence later surfaces. Several circuits have adopted this commonsense conclusion. *See, e.g.*, *United States v. Barroso*, 719 F. App'x 936, 941 (11th Cir. 2018) (no *Brady* violation when "there is no evidence the government possessed that information prior to trial, much less suppressed it"); *United States v. Edwards*, No. 97-5113, 1998 WL 172617, at *2 (10th Cir. Apr. 14, 1998) ("The government's obligation under *Brady* cannot apply to evidence not in existence at the time of the criminal proceeding."); *United States v. Dimas*, 3 F.3d 1015, 1019 n.3 (7th Cir. 1993) ("[L]ater developments in the investigation, if any, are irrelevant because the question is whether the result would have changed if the prosecutors disclosed the evidence at the time [of trial], not whether the outcome would differ if the case were tried today.").

We agree. Martinez's trial ended on September 26, 1997, and Fryer was not charged with drug use until February 5, 1998. Even assuming Maricopa County prosecutors had a duty to discover the charges brought against Fryer by Gila County, that duty did not arise until after Martinez's trial. Martinez identifies nothing else in the record that suggests the prosecution knew of Fryer's alleged drug use before the end of Martinez's trial. Because the prosecution does not have an obligation under *Brady* to

disclose exculpatory evidence it discovers after trial, Martinez fails to establish cause.

## B. Benefits Bestowed on Fryer

Martinez also alleges that the prosecution "withheld evidence concerning benefits conferred on Fryer." He argues that, because Fryer testified against Martinez, he was not charged for several crimes, including making a false report to law enforcement, a domestic violence incident, and possessing drug paraphernalia. Martinez also argues that Fryer's testimony caused the prosecution not to seek several sentencing enhancements against Fryer.

Martinez's contentions, however, are wholly speculative. He does not identify any evidence that shows Fryer was not charged with crimes or that he was otherwise treated favorably because of his testimony. Instead, Martinez's argument relies on the baseless theory that "[k]eeping Fryer happy prior to Martinez's capital sentencing hearing was necessary to prevent any possibility Fryer might recant his trial testimony." We require more to establish a *Brady* violation. *See, e.g.*, *Benn*, 283 F.3d at 1057–58 (evidence that the prosecution's key witness was released from jail during the defendant's trial when he called the prosecutor); *Singh v. Prunty*, 142 F.3d 1157, 1162 (9th Cir. 1998) (evidence of an agreement to provide benefits to witness).

The only evidence of an agreement that Martinez identifies is Fryer's 1997 plea agreement, which required him "to cooperate with [the] [Maricopa] county attorney's office in the prosecution of [Martinez's] case." That plea agreement, however, was disclosed to Martinez and introduced at his trial. Indeed, Martinez cross-examined Fryer about the plea agreement and used it to impeach his

testimony.  That evidence, therefore, cannot support a *Brady* violation.

Because Martinez has failed to demonstrate that the prosecution withheld any evidence of benefits conferred on Fryer in exchange for his testimony against Martinez, he fails to establish cause to overcome the procedural default of his *Brady* claim.  Accordingly, we affirm the district court's denial of that claim.

## IV.    Rule 60(b) Motion

After the district court denied Martinez's habeas petition and his motion to alter or amend the judgment, but before Martinez filed his opening brief in this court, Martinez filed a motion styled "request for indication whether [the] district court would consider a rule 60(b) motion."  The district court denied that motion.  After we later remanded the case, Martinez filed a renewed request for indication of whether the district court would consider a Rule 60(b) motion for reconsideration.  The court denied that motion, and Martinez appeals.

We lack jurisdiction to review the district court's denial of Martinez's motion. Our decision in *Defenders of Wildlife v. Bernal*, 204 F.3d 920 (9th Cir. 2000), is controlling. There, we stated:

> While this appeal was pending Defenders filed a motion under Federal Rule of Civil Procedure 60(b) . . . .  On September 23, 1998, the district court issued an order declining to entertain or grant the Rule 60(b) Motion.  A district court order declining to entertain or grant a Rule 60(b) Motion is a procedural     ruling     and     not     a     final

determination on the merits. Because there is no final judgment on the merits, the underlying issues raised by the 60(b) Motion are not reviewable on appeal.

*Bernal*, 204 F.3d at 930 (citation omitted).

That is precisely what happened here. The district court declined to consider Martinez's Rule 60(b) motion. Because that order was a procedural ruling, it is not reviewable on appeal. *See Scott v. Younger*, 739 F.2d 1464, 1466 (9th Cir. 1984) ("[I]f the district court's order is construed as a denial of Scott's request to 'entertain' the motion to vacate, that denial is interlocutory in nature and not appealable."). As a result, we dismiss Martinez's claim appealing the denial of his request to consider a Rule 60(b) motion.

## V. Jury Instruction on Premeditation

Martinez contends that the court erred in instructing the jury about what the government needed to establish to demonstrate that Martinez committed first-degree murder. In reading the instructions, the court stated, in relevant part:

The crime of first degree murder requires proof of the following[:] . . . number three, the defendant acted with premeditation. "Premeditation" means that the defendant's intention or knowledge existed before the killing long enough to permit reflection; however, the reflection differs from the intent or knowledge that conduct will cause death. It may be as instantaneous as successive thoughts in the mind, but it must be actual reflection, and it may be actual reflection, and it may be proved by direct or [circumstantial]

evidence. It is this period of reflection regardless of its length which distinguishes first degree murder from intentional or knowing second degree murder. An act is not done with premeditation if it is the instant effect of a sudden quarrel or heat of passion.

Martinez contends that the instruction was flawed in two ways. First, he argues that the instruction was erroneous under Arizona law because it did not require the jury to find that Martinez actually reflected before murdering Officer Martin. Second, he argues that the court's oral instruction that premeditation "must be actual reflection, and it may be actual reflection" was an "ambivalent statement [that] permitted Martinez's jury to find the element of premeditation on less than proof beyond a reasonable doubt." We reject both arguments.

When a challenge to jury instructions comes before us in a habeas petition, "[t]he only question . . . is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "[T]he instruction . . . must be considered in the context of the instructions as a whole and the trial record." *Id.* "If the charge as a whole is ambiguous, the question is whether there is a 'reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.'" *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (per curiam) (quoting *Estelle*, 502 U.S. at 72). A "reasonable likelihood" is lower than "more likely than not" but higher than a mere "possibility." *See Boyde v. California*, 494 U.S. 370, 380 (1990).

Martinez relies heavily on *State v. Ramirez* to support his first argument, but the facts in that case are distinct. 945 P.2d 376 (Ariz. Ct. App. 1997). There, the premeditation instruction stated: "[T]he time for reflection must be longer than the time required merely to form the knowledge that conduct will cause death. It may be as instantaneous as successive thoughts in the mind, and it may be proven by circumstantial evidence." *Id.* at 378. The court held that the instruction erred in two ways. First, it "fail[ed] to be clear that premeditation requires actual reflection." *Id.* Second, the instruction stated that the time for reflection can be "'instantaneous as successive thoughts in the mind' but provided no balancing language to the effect that an act cannot be both impulsive and premeditated." *Id.*

Neither of those errors was present in the jury instructions in this case. Unlike in *Ramirez*, the court specifically instructed that premeditation requires "actual reflection." And whereas the instruction in *Ramirez* did not provide balancing language stating that an act cannot be impulsive and premeditated, the instruction here did provide such language: It stated that "[a]n act is not done with premeditation if it is the instant effect of a sudden quarrel or heat of passion." That statement conveyed to the jury that Martinez could not be found guilty of first-degree murder if they believed he acted impulsively. Even if we assume that the jury instructions were somehow erroneous, Martinez is not entitled to relief, for he has not shown that the premeditation instruction "so infected the entire trial that the resulting conviction violate[d] due process." *Cupp*, 414 U.S. at 147.

Martinez's second argument also falls short. He relies on the fact that the court erroneously stated that the reflection required for a finding of premeditation "may be actual

reflection" after saying that it "must be actual reflection" when reading the instructions to the jury. Such an oral hiccup, however, did not violate Martinez's due process rights. Before the court read the instructions, the bailiff distributed copies of the jury instructions to each juror, and the court told them that they could "read along." The written instructions correctly stated that the jury *had* to find that Martinez reflected before murdering Officer Martin. Considering the totality of the circumstances—the jury possessed copies of the instructions, the court correctly read the phrase in the instructions (before misreading it), and the prosecution twice stated during closing arguments that premeditation requires actual reflection—we conclude that the court's oral misstatement did not cause Martinez's conviction to violate due process. *See Estelle*, 502 U.S. at 72. We deny Martinez's claim challenging the jury instructions.

## VI.    Ineffective Assistance of Counsel (Failure to Retain Pathologist)

In his federal habeas petition, Martinez argued for the first time that his trial counsel was constitutionally deficient by failing to retain an independent pathologist to impeach a prosecution expert's testimony. The district court denied his claim because it was procedurally defaulted and Martinez had not established prejudice to overcome the default.

At trial, Dr. Phillip Keen, the Maricopa County Chief Medical Examiner, testified about the results of an autopsy on Officer Martin. He told the jury that, of the shots to Officer Martin's hand, back, neck, and head, the shot to his head was fired last and may have occurred when Officer Martin was already lying on the ground.

Martinez argues that, had his counsel retained an independent pathologist to impeach Dr. Keen's testimony about the sequence of shots, the prosecution's theory of premeditation would be undermined. Martinez concedes that his IAC claim is procedurally defaulted, but contends that he can overcome that procedural default under *Martinez v. Ryan*.

In *Martinez*, the Supreme Court held that where a petitioner fails to raise an IAC claim in state court, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial" if (1) "state law requires prisoners to raise claims of ineffective assistance of trial counsel 'in an initial-review collateral proceeding,'" and (2) "the default results from the ineffective assistance of the prisoner's counsel in the collateral proceeding." *Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017) (quoting *Martinez*, 566 U.S. at 16–17). To show that his claims are "substantial," a petitioner must demonstrate that they have "some merit." *Martinez*, 566 U.S. at 14. The parties do not dispute that Arizona law required Martinez to raise his IAC claim in a collateral proceeding, so our analysis focuses on whether Martinez's PCR counsel was ineffective. *Id.* at 4. That necessarily requires us to evaluate the strength of Martinez's underlying IAC claim. *See Atwood v. Ryan*, 870 F.3d 1033, 1060 (9th Cir. 2017).

Martinez's trial counsel was not ineffective because, even if the retention of an expert would have undermined the prosecution's theory of premeditation, Martinez was not prejudiced. There is not a reasonable probability that the jury would have reached a different verdict had Martinez's counsel retained an independent pathologist. There was

significant evidence in the record supporting a finding that Martinez acted with premeditation.

Fryer testified that, before the shooting, Martinez told him he had a warrant out for his arrest. When Martinez revealed a handgun from underneath his shirt, Fryer asked Martinez what it was for, to which Martinez responded "for protection and if shit happens." When Fryer saw a police car and asked Martinez what he would do if he was stopped by the police, Martinez responded that "he wasn't going back to jail." When he was pulled over by Officer Martin, Martinez was driving a stolen vehicle—a fact which he did not dispute during trial. These facts all support the prosecution's argument that Martinez planned to murder Officer Martin before he shot him.

Moreover, Dr. Keen's testimony was relatively weak evidence of premeditation. The prosecution argued that his testimony supported a finding that Martinez shot Officer Martin "when he was down" as a "coup de grace." But the only portion of Dr. Keen's testimony supporting that assertion was his testimony that he believed Officer Martin's "head wound was last." Dr. Keen qualified that testimony by stating that it relied on hypothetical possibilities and assumptions based on the evidence. The jury considered those qualifications when assessing the reliability of Dr. Keen's testimony.

Martinez's impeachment of Dr. Keen also underscores our conclusion that Martinez did not suffer prejudice. Upon questioning by Martinez, Dr. Keen conceded that the opinions he expressed at trial conflicted with what he had said during a pretrial interview, in which he stated that "the head, hand, and neck could have been [shot] at any sequence with the back being the last shot." Dr. Keen also admitted that he had previously concluded that Officer Martin was

standing when he was shot. Even without the testimony of an opposing expert, therefore, the veracity and reliability of Dr. Keen's testimony was undermined.

Because of the limited value of Dr. Keen's testimony in the prosecution's case for premeditation, and because of the significant other evidence presented at trial supporting premeditation, Martinez's trial counsel's failure to retain an independent expert did not prejudice Martinez. Martinez therefore cannot establish that his PCR counsel was ineffective for failing to raise the IAC claim. Because Martinez fails to overcome the procedural default of his IAC claim, we affirm the district court's denial of that claim.

## VII. Ineffective Assistance of Counsel (Failure to Rebut the Prosecution's Expert During Sentencing)

Martinez also argued, again for the first time in his habeas petition, that his trial counsel was deficient for a different reason: He failed to recall an expert at sentencing to rebut testimony by another expert retained by the prosecution. He argues that he can establish cause and prejudice under *Martinez v. Ryan* to overcome the procedural default of this claim.

At sentencing, Dr. Susan Parrish, an expert psychologist retained by Martinez, testified that Martinez's shooting of Officer Martin resulted from Martinez's post-traumatic stress disorder (PTSD). Dr. Parrish testified that Martinez demonstrated characteristics commonly "associated with someone who comes from an environment where there was a prolonged exposure to violence," "[i]mpulsivity or failure to plan," "[i]rritability and aggressiveness," and "[r]eckless disregard for [the] safety of self and others." Based on her diagnosis, Dr. Parrish testified that she believed Martinez's

actions on the day of the shooting were "really more reactive." She testified that Martinez "felt he had no choice" but to shoot Officer Martin.

In rebuttal, the prosecution presented testimony by Dr. Michael Bayless, another expert psychologist. Dr. Bayless disagreed with Dr. Parrish's diagnosis of PTSD. He testified that Martinez suffered from antisocial personality disorder, and thus "understands the rules and regulations. He just chooses not to abide by them." Dr. Bayless testified that Martinez killed Officer Martin "because he didn't want to go back to prison."

Martinez argues that, had his counsel recalled Dr. Parrish to rebut Dr. Bayless's testimony, Dr. Parrish could have established that Martinez was unable to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of the law. That evidence would create "a reasonable probability the Arizona Supreme Court would have found [a] statutory mitigating factor [pursuant to A.R.S. § 13-703(G)(1)] and imposed a life sentence," rather than affirm Martinez's death sentence.

Because of the overwhelming evidence introduced at sentencing that Martinez could appreciate the wrongfulness of his conduct, we conclude that Martinez does not establish prejudice, and thus that he cannot overcome the procedural default of his IAC claim. Even if Martinez's trial counsel had recalled Dr. Parrish to refute Dr. Bayless's testimony, the sentencing court likely would have concluded that Martinez had not established the statutory mitigating circumstance in § 13-703(G)(1).

When sentencing Martinez, the court recognized the inconsistency between the testimony of Dr. Parrish and Dr. Bayless. The court determined, however, that "[Martinez]

killed Officer Martin because he did not want to return to prison as a result of a probation violation warrant." The court recounted several pieces of evidence that supported such a finding: Martinez told Fryer that he had a warrant out for his arrest and would not go back to prison; Martinez told Fryer he had a gun in case something happened; Martinez took Officer Martin's service weapon after murdering him; and Martinez committed another murder shortly after murdering Officer Martin. As the court explained, "[t]hese choices belie the notion that the homicide of Officer Martin was the result of being in a dissociative state or a mere impulsive reaction."

Moreover, Dr. Parrish's rebuttal testimony would not necessarily have established the statutory mitigating circumstance, and thus would not have entitled Martinez to relief. Dr. Parrish's testimony focused on why Martinez's murder of Officer Martin resulted from PTSD. But in Arizona, "a mere character or personality disorder alone is insufficient to constitute a mitigating circumstance." *State v. Brewer*, 826 P.2d 783, 802 (Ariz. 1992); *see also State v. Clabourne*, 983 P.2d 748, 754 (Ariz. 1999) ("In every case in which we have found the (G)(1) factor, the mental illness was 'not only a substantial mitigating factor . . . but a *major contributing cause* of [the defendant's] conduct that was "sufficiently substantial" to outweigh the aggravating factors present.'" (alterations in original) (quoting *State v. Jimenez*, 799 P.2d 785, 800 (Ariz. 1990))). Accordingly, the other evidence in the record was sufficient to support the sentencing court's conclusion that Martinez failed to establish the statutory mitigating circumstance in § 13-703(G)(1).

Because of the significant evidence introduced at sentencing establishing that Martinez could appreciate the

wrongfulness of his conduct and conform his conduct to the requirements of the law, Martinez was not prejudiced by his counsel's failure to recall an expert to rebut the prosecution's witness.    Martinez's PCR counsel was therefore not ineffective for failing to raise that claim.  Because Martinez cannot overcome the procedural default of his IAC claim, we affirm the district court's denial of that claim.

## VIII.  Application of the Causal Nexus Test During Sentencing

Martinez next argues that the Arizona State Court applied a "causal nexus" test, in violation of *Eddings v. Oklahoma*, 455 U.S. 104 (1982), under which a circumstance is not mitigating unless causally connected to the commission of the crime.  He contends that the court's failure to consider his family history as a mitigating circumstance was an unreasonable application of clearly established federal law.

The Supreme Court has held that "a State [cannot], consistent with the Eighth and Fourteenth Amendments, prevent the sentencer from considering and giving effect to evidence relevant to the defendant's background or character or to the circumstances of the offense that mitigate against imposing the death penalty."  *Penry v. Lynaugh*, 492 U.S. 302, 318 (1989), *abrogated on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002); *see also Eddings*, 455 U.S. at 113; *Lockett v. Ohio*, 438 U.S. 586, 606–08 (1978).  "[I]t is not enough simply to allow the defendant to present mitigating evidence to the sentencer.  The sentencer must also be able to consider and give effect to that evidence in imposing sentence."  *Penry*, 492 U.S. at 319.

As a result, a sentencing court may not treat mitigating evidence of a defendant's background or character as

"irrelevant or nonmitigating as a matter of law" just because it lacks a causal connection to the crime. *Towery v. Ryan*, 673 F.3d 933, 946 (9th Cir. 2012), *overruled on other grounds by McKinney v. Ryan*, 813 F.3d 798 (9th Cir. 2015) (en banc). The sentencer may, however, consider "causal nexus . . . as a factor in determining the weight or significance of mitigating evidence." *Lopez v. Ryan*, 630 F.3d 1198, 1204 (9th Cir. 2011), *overruled on other grounds by McKinney*, 813 F.3d 798. "[T]he use of the nexus test in this manner is not unconstitutional because state courts are free to assess the weight to be given to particular mitigating evidence." *Schad v. Ryan*, 671 F.3d 708, 723 (9th Cir. 2011), *overruled on other grounds by McKinney*, 813 F.3d 798. As the Court explained in *Eddings*:

> Just as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, *as a matter of law*, any relevant mitigating evidence. . . . The sentencer, and the Court of Criminal Appeals on review, may determine the weight to be given relevant mitigating evidence. But they may not give it no weight by excluding such evidence from their consideration.

455 U.S. at 113–15.

These principles bear on Martinez's case. In *McKinney*, we held that "[f]or a little over fifteen years [beginning in the late 1980s], the Arizona Supreme Court routinely articulated

and insisted on [an] unconstitutional causal nexus test."[3] 813 F.3d at 815. Under this test, "[a]s a matter of law, a difficult family background or mental condition did not qualify as a nonstatutory mitigating factor unless it had a causal effect on the defendant's behavior in committing the crime at issue." *Id.* at 816. The Arizona Supreme Court "finally abandoned its unconstitutional causal nexus test for nonstatutory mitigation" in the mid-2000s. *Id.* at 817. *McKinney* included a string cite of cases in which the Arizona Supreme Court had applied its unconstitutional causal nexus test, which included Martinez's case. *Id.* at 816.

Here, the Arizona Supreme Court stated:

> The trial court found that Martinez'[s] family background qualified as a non-statutory mitigating factor, but did not give it substantial weight . . .
>
> Although Dr. Parrish testified that Martinez adopted a "survival" state of mind due to his violent upbringing, this did not affect his conduct on August 15, 1995. There is simply no nexus between Martinez'[s] family history and his actions on the Beeline Highway. His family history, though regrettable, is not entitled to weight as a non-statutory mitigating factor.

---

[3] "We did not say, however, that [the Arizona Supreme Court] always applied it." *Greenway v. Ryan*, 866 F.3d 1094, 1095 (9th Cir. 2017) (per curiam).

The court's analysis demonstrates that it applied an unconstitutional causal nexus test to Martinez's family history.  Because it concluded that there was "no nexus between Martinez'[s] family history and his actions on the Beeline Highway," it granted it no weight.  Under *Eddings*, that is erroneous.  *See Penry*, 492 U.S. at 318.

Having concluded that AEDPA is satisfied, we review Martinez's claim de novo.  *See Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc).  Martinez has established a Constitutional violation, so our analysis focuses on whether Martinez was prejudiced.  *See Poyson v. Ryan*, 879 F.3d 875, 891 (9th Cir. 2018).

Martinez can establish prejudice if the court's error "had [a] substantial and injurious effect or influence" on the challenged decision.  *See Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  He is not entitled to relief, however, unless he can establish that the error "resulted in 'actual prejudice.'"  *Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015) (quoting *Brecht*, 507 U.S. at 637); *see also McKinney*, 813 F.3d at 822.

We determine that Martinez was not prejudiced by the court's constitutional error.  Several considerations lead us to that conclusion.

First, the Arizona Supreme Court considered Martinez's family history in its analysis of another mitigating factor: impaired capacity.  In that section of its opinion, the court recounted Martinez's "violent childhood," which included "Martinez and his sister, Julia, both suffer[ing] physical abuse at the hands of their father. . . .  To protect himself, Martinez began sleeping with a knife."  The court also recounted Dr. Parrish's testimony that, on the day he was

stopped by Officer Martin, "Martinez probably thought, 'I'm not going back to prison. This man intends to put me in prison. It's me or him [sic].'" Accordingly, the court appears to have considered the family history evidence Martinez argues they should have considered—albeit in the context of a different mitigating circumstance—and decided not to assign that family history great weight. Such a conclusion did not violate the Constitution. *See Hedlund v. Ryan*, 854 F.3d 557, 587 n.23 (9th Cir. 2017) (stating that, under *Eddings*, "a court is free to assign less weight to mitigating factors that did not influence a defendant's conduct at the time of the crime"); *Styers v. Ryan*, 811 F.3d 292, 298–99 (9th Cir. 2015) (holding that the Arizona Supreme Court did not violate *Eddings* in assigning little weight to the petitioner's PTSD when it lacked a causal connection to the crime).

Second, although we review the Arizona Supreme Court's decision, the sentencing court's analysis is instructive.[4] There, the court "considered family history," but concluded that it should "not [be] given substantial weight." The sentencing court reasoned that "the domestic violence and parental drug abuse ended 7 or 8 years before the murder when [Martinez's] father became very religious . . . . [Martinez's] mother testified that the parental drug

---

[4] The last reasoned state court decision addressing Martinez's causal nexus claim is the Arizona Supreme Court's decision affirming Martinez's death sentence on direct appeal. *See Crittenden v. Ayers*, 624 F.3d 943, 950 (9th Cir. 2010). "We look to the decision of the sentencing judge only to the degree it was adopted or substantially incorporated by the Arizona Supreme Court." *McKinney*, 813 F.3d at 819. Because the Arizona Supreme Court reviewed Martinez's sentence de novo and does not appear to have adopted the sentencing judge's reasoning, we review only the Arizona Supreme Court's decision.

abuse was kept from the children and that it ended when they moved to Globe." This analysis illustrates how an objective factfinder would have ruled had the Arizona Supreme Court not committed an *Eddings* error. *See Kayer v. Ryan*, 923 F.3d 692, 724 (9th Cir. 2019). Because Martinez's violent family history was far removed from the murder, we conclude that the court would have accorded it little weight as a mitigating circumstance.

Third, this case is distinct from other cases in which we have found prejudice. In *Poyson v. Ryan*, for example, the Arizona Supreme Court "improperly disregarded evidence concern[ing] the defendant's traumatic childhood and mental health issues." 879 F.3d at 892. We found that evidence—that the defendant had "suffered a number of physical and developmental problems as a child," was "involuntarily intoxicated as a young child," was "lured to the home of a childhood friend and violently raped," and had survived the suicide of "the one true father figure" he had— "particularly compelling." *Id.* at 892–93. The evidence of Martinez's family history, although unfortunate, is not so grim. Martinez does not claim to have suffered from mental health issues and endured significantly less frequent and severe physical abuse as a child.

Our decision in *Spreitz v. Ryan* is also distinct. 916 F.3d 1262 (9th Cir. 2019). There, we found prejudice when the court disregarded "evidence regarding [the defendant's] history of alcohol and substance abuse—spanning nearly half his life by the time when he committed the crime at the age twenty-two." *Id.* at 1279. Critically, we stated that the mitigating evidence was "linked to his emotional immaturity, another nonstatutory mitigating circumstance recognized by the Arizona Supreme Court but described as not 'significant.'" *Id.* at 1280 (quoting *State v. Spreitz*,

945 P.2d 1260, 1281 (Ariz. 1997)).  The court's erroneous application of the unconstitutional nexus standard therefore "minimized the value of other mitigating evidence as well." *Id.* at 1281.

Not so here.  As we have already noted, the court recounted and considered Martinez's family when considering other mitigating factors.  Martinez's family history bore no connection to his age, the other statutory mitigating factor considered by the Arizona Supreme Court. Unlike *Spreitz*, therefore, the Arizona Supreme Court was not "left with a critical void in [Martinez's] narrative" because of its nexus rule; it considered Martinez's family history in other contexts and granted it little weight.  *Id.* at 1281.

We also note that this case involves an aggravating factor absent from cases in which we have found *Eddings* error: The murder of an on-duty peace officer.  *See* A.R.S. § 13-703(F)(10).  That factor, as the sentencing court noted, "carries significant weight.  The unprovoked murder of a peace officer, so the defendant can avoid his obligation under the law, is really no less than a personal declaration of war against a civilized society."  The substantial weight of that aggravating factor leads us to believe that Martinez's family history, had it been considered a mitigating factor, would not have affected his death sentence.

Because Martinez cannot demonstrate that the *Eddings* error had a substantial and injurious effect on his sentence, he cannot establish prejudice.  Accordingly, Martinez is not entitled to relief.

## IX. Expansion of the Certificate of Appealability

Martinez asks us to issue a COA as to one *Brady* claim that the district court declined to certify. We may not issue a COA unless the applicant "make[s] a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Because Martinez's *Brady* claim relates to evidence of premeditation, and because we conclude that overwhelming evidence supported the prosecution's theory of premeditation, we decline to issue a COA.

## X. Motion to Stay Appeal and Remand for Consideration of *Brady* Claim

Having concluded that Martinez is not entitled to habeas relief, we turn to his motion to remand. Martinez argues that remand is warranted so the district court can consider "a red [w]eekly [p]lanner belonging to, and annotated by, Mario Hernandez, a prosecution witness at Martinez's . . . trial." He contends that the planner, which Martinez discovered after it was introduced into evidence during his separate murder trial in California, demonstrates "that Hernandez learned of Martinez's arrest for the homicide of Officer Martin from watching television news at 2:30 a.m. on August 17, 1995 . . . rather than from a phone call Hernandez purportedly answered from Martinez earlier that morning." Martinez argues that the planner would have impeached Hernandez's testimony that he answered a call from Martinez earlier that morning in which Hernandez said he "got busted for blasting a jura." He concedes that "there was

little question at the Arizona trial as to whether Martinez was responsible for the officer's death," and argues only that the planner would have proven a lack of premeditation.

We decline to remand because, even if the prosecution failed to disclose the planner to Martinez, the withheld evidence did not prejudice Martinez. As we have concluded, overwhelming evidence supported the prosecution's argument that Martinez acted with premeditation.

Other considerations also support our decision to deny Martinez's motion to remand. Martinez argues that introduction of the planner would have demonstrated that he did not call Hernandez after the murder, but Martinez introduced other evidence at trial to support that same argument. Martinez summarized that evidence during his closing argument: "[T]here is a problem with what [Hernandez and Moreno] claim[] to have heard Mr. Martinez say in a telephone call." Martinez told the jury that, although he allegedly called Hernandez around 1:00 a.m., "[w]e know from several witnesses that at 1:00 o'clock Mr. Martinez is still at the Indio County jail, and he's in an interview room there somewhere." He asked the jury "if [it] makes any sense at all that [the police] would give [] Martinez a telephone without any supervision at all . . . . isn't it a reasonable inference . . . that some officer would have overheard what was being said?" Martinez also argued that Moreno, who testified about the call during Martinez's trial, had "a motive to lie" and "a motive to want to hurt [] Martinez." Admission of the journal may have helped Martinez further undermine the evidence of his phone call, but it wouldn't have added much.

That is so because the journal is weak impeachment evidence of the testimony that Martinez called Hernandez after Officer Martin's murder. Even if Hernandez's journal

entry is accurate and he learned of Martinez's arrest on the television news at 2:30 a.m., that doesn't necessarily mean Martinez didn't call him in the early morning hours after the murder. Perhaps Hernandez was simply mistaken about the time of the call—indeed, during trial, Hernandez testified that he referred to Martinez's arrest on television while speaking to Martinez, suggesting that he found out about Hernandez's arrest from television. Or perhaps the journal entry demonstrates that Hernandez saw Martinez's arrest on television after speaking to Martinez by phone. In short, the value of the journal as impeachment evidence isn't nearly as probative as Martinez makes it out to be.

For these reasons, Martinez cannot establish that the planner was material evidence. We decline to remand.

## CONCLUSION

We **AFFIRM** the district court's denial of a writ of habeas corpus as to Martinez's claims relating to his first-degree murder conviction and death sentence and **DISMISS** for lack of jurisdiction Martinez's claim that the court erred in denying his request to consider a Rule 60(b) motion. We **DECLINE** to expand the COA. We also **DENY** Martinez's motion to stay the appeal and remand for consideration of another *Brady* claim.